DAVIS & AUBIN *v.* JOHN BRADLEY & CO.

*Trover. Sale and title. Bill of sale to be treated like other written instruments, and not open to explanation by parol testimony. Estoppel in pais.*

Under a conditional sale or contract, the general property never passes, and when the payment of the stipulated price, under such sale, is made a condition precedent, payment must be made before the title vests in the purchaser.

But where S. & C. sold a quantity of wool to B. & H. B. and sent them an absolute and unconditional bill of sale, advising them by the bill of sale, that the wool was shipped to Bradley & Co., at Burlington, subject on its arrival, to their order, of which immediately after its arrival, B. & H. B. took possession. It was held—that the bill of sale passed an immediate and vested title to the wool, in B. & H. B.

A bill of sale, absolute and unconditional in its terms, and free from ambiguity, is governed by the same principles, that regulate other written instruments, and parol testimony cannot be received to contradict, add to, or vary it, for " the bill of sale must be considered as the final contract between the parties."

S. & C. sold a quantity of wool to B. & H. B. and shipped the same to Burlington, to the care of B. & Co., and sent a bill of sale to B. & H. B., advising them, in said bill of sale, that said wool was shipped to the care of B. & Co., and subject to their order; upon the arrival of the wool at Burlington, said B. & H. B. took possession of, and assorted the same, and re-shipped twenty-one sacks, and consigned the same to D. & A., at Boston; taking at the time, a receipt for the same of B. & Co. forwarding merchants; the said receipt B. & H. B. sent to said D. & A., and also made a draft upon them, for the full value of the wool; the said draft was accepted and paid by said D. & A. The said wool, after it was thus re-shipped, and while *in transitu*, was attached as the property of B. & H. B., and brought back and placed in the store-house of B. & Co., for safe keeping. In an action of TROVER, brought by D. & A. against B. & Co. for said wool—it was *held*—that S. & C. are concluded, *by their acts*, from denying the title, and right, of B. & H. B. to this property, by the execution of their bill of sale, and order, for the delivery of its possession. And that B. & H. B. were equally concluded by their consignment of the property to D. & A., and their draft on them for its value. And that B. & Co. were also concluded, from denying D. & A.'s title to the property, and their right to immediate possession by the execution of their receipt for the same, as forwarding merchants.

And it was also held—that so far as D. & A. were concerned, the *acts* of all these parties operate as an estoppel *in pais*, preventing them from making any claim to this property, even, if as between B. & H. B. and S. & C., the property was wrongfully disposed of by B. & H. B.

TROVER, for a quantity of wool. Plea, the general issue, and trial by the court.

Davis & Aubin *v.* Bradley & Co.

The plaintiffs, to sustain the issue on their part, offered a bill of sale, of a quantity of wool, from Sanborn & Catlin to B. & H. Boynton, of which the following is a copy, viz :

" Bill of Sale."

" SWANTON, JUNE 2, 1848.

" B. & H. Boynton,
" Bought of Sanborn & Catlin,

| | | |
|---|---|---:|
| " 2042 lbs. superfine wool, | | |
| " 2072 " fine wool, | | |
| " 922 " coarse wool, | | |
| " 190 " No. 2, coarse wool, | | |
| " 147 " washed wool, | | |
| " 268 " black wool, | | |
| " 5641 " pelt wool, 28 cts., | | $1579,48 |
| " 329 " tags 3 cts., | | 9,87 |
| " 3110 " coarse unwashed wool 18 cts., | | 559,80 |
| " 45 sacks of wool, | | $2149,15 |
| " Cartage on the above to St. Albans, | | 8,75 |
| " | | $2157,90 |
| " 1 note in three months, | $400,00 | |
| " Interest, | 6,00 | |
| " | $406,00 | |
| " 1 note in nine months, | $400,00 | |
| " The balance in six months, | $1357,90 | |

" The above wool is shipped to the care of Bradley & Co. sub-
"ject to your order.          Truly yours,
     (Signed)                    " SANBORN & CATLIN."
  " P. S. You will forward us notes to settle the above bill soon,
" for we want the three month note to use.
  " Swanton, June 11, 1848."
     (Signed)                              " S. & C."

The plaintiffs then introduced evidence tending to prove, that the wool was drawn by said Sanborn & Catlin, to St. Albans Bay, there shipped to John Bradley & Co., the defendants, at Burlington, who were wharfingers and forwarding merchants at that place, and subject to the order of B. & H. Boynton. The plaintiffs also introduced evidence tending to prove, that the wool was delivered on the defendants' wharf at Burlington, per steamboat, part on the 10th, and part on the 13th of June, 1848, and then taken posses-

sion of by B. & H. Boynton. The fine parts thereof weighing 4039½ pounds, marked " Forwarded, Davis & Aubin, Boston," by said B. & H. Boynton, and a receipt taken therefor, of which the following is a copy, " Received of B. & H. Boynton, twenty-one " bales wool to be forwarded to Davis & Aubin, Boston."

" Burlington, June 13, 1848."

(Signed)                " JOHN BRADLEY & Co."

" By Strong."

That on the same 13th of June, the said B. & H. Boynton wrote the plaintiffs, advising them of the consignment of said wool, and sending them an invoice thereof, and enclosing the receipt aforesaid, and drew on the plaintiffs for the full value of the said wool, which drafts, were by said plaintiffs, accepted and paid, for which payment the said B. & H. Boynton are now indebted to the plaintiffs.

Also evidence tending to prove, that said wool was shipped, and taken on board of a canal boat as far as Orwell, towards Boston, and there attached, as the property of B. & H. Boynton, and brought back and put in the defendants' store-house, in Burlington, for safe keeping. That soon after this, and while the wool was in defendants' store-house, and before this suit was brought, the plaintiffs demanded of the defendants, the wool in question; they refused to deliver it up, saying " that there were a number of claimants for the wool, and they thought they should hold it, until they found who was entitled to it." ·

The defendants then offered parol evidence to prove, that the sale of the wool, from said Sanborn & Catlin, to B. & H. Boynton, was a conditional sale, that at the time of making the contract therefor, between Sanborn & Catlin and B. & H. Boynton, on the 2d of June, 1848, the price of the wool was agreed between them, and further, that it should be weighed and sacked by Sanborn & Catlin, and carted from Swanton to St. Albans Bay, and there shipped to Burlington, subject to the order of B. & H. Boynton. That said Sanborn & Catlin should send a bill thereof, to B. & H. Boynton, at Hinesburgh, and that said B. & H. Boynton should at once thereafter, procure and send the said Sanborn & Catlin, three notes payable in three, six, and nine months, for amount of said bill, the two last named notes to be signed by said B. & H. Boynton, and Jedediah Boynton, and some other respon-

XXIV.    5

Davis & Aubin *v.* Bradley & Co.

sible person.   That the title to said wool, was not to vest in said
B. & H. Boynton, until said notes were thus furnished, but was
to remain the property of Sanborn & Catlin.   That on the 17th
of June, 1848, said B. & H. Boynton failed, and have ever since
been insolvent; that said notes were never furnished to said San-
born & Catlin, though they demanded them of said B. & H.
Boynton, the first of July, 1848; that said Sanborn & Catlin
demanded said wool of Eli Chittenden, the special officer, who
attached, and also the general agent of the defendants, (having the
management and control of all their wharves and store-houses and
property stored therein,) on the same day that the plaintiffs
demanded the wool of these defendants, that he replied, " there
" were other claimants of the wool, and he would not deliver it to said
" Sanborn & Catlin;" and that said Sanborn & Catlin brought a
suit against said Chittenden, for said wool, which is now pending
in Franklin County Court.

To the admission of this evidence, the plaintiffs objected, on the
ground that it would vary and control the written contract and
bill of sale.

The court, March Term, 1851,— BENNETT, J., presiding, exclu-
ded the testimony, and rendered judgment for the plaintiffs.   To
which decision of the court, excluding the parol evidence offered
by the defendants as to the bill of sale, the defendants excepted.

*D. A. Smalley* and *E. J. Phelps* for the defendants.

This case presents these questions for the consideration of the
Court.

1. Can the defendants, standing upon the title of B. & H.
Boynton, introduce parol evidence to show what the real contract
was between Sanborn & Catlin and B. & H. Boynton, notwith-
standing the bill of sale.

In the case of a blank indorsement upon a note, or a memoran-
dum of the amount of property sold, it is well settled, that parol
·evidence is admissible to show the extent of the contract.   *Barrows*
v. *Lane*, 5 Vt. 161.

2. It is insisted by the defendants, that the plaintiffs would have
the right to introduce parol evidence of the contract, as between
themselves and Sanborn & Catlin and B. & H. Boynton ; and the
defendants, standing between them, are entitled to the same right.

Davis & Aubin *v.* Bradley & Co.

3. The facts, offered to be proved, show that the transaction was a fraud upon Sanborn & Catlin.

Fraud in a contract may always be shown.

*L. E. Chittenden* for the plaintiffs.

A single question is presented by the bill of exceptions, which has been too often settled by this court, now to admit of much discussion.

The evidence offered by the defendants, was offered for the express purpose of contradicting the bill of sale, which is the only legal evidence of the contract between Sanborn & Catlin and B. & H. Boynton. It proposed to ingraft upon the contract a parol condition, that the title to the wool should not pass to the Boyntons', until certain notes were forwarded to Sanborn & Catlin. This it was not competent for the defendants to do. *Reed* v. *Wood,* 9 Vt. 285. *Lasso* v. *Neale,* 3 Com. Law, 267. 3 Starkie on Ev. 1005 – 6. *Hatch* v. *Hyde,* 14 Vt. 25 – 459. *Isaacs* v. *Elkins,* 11 Vt. 679. *Bradley* v. *Bentley,* 8 Vt. 243. *Mumford* v. *McPherson,* 1 Johns. Rep. 413. 2 Kent Com. 498. 1 Johns. 139. 3 Johns. 68. 1 Cowen, 249. 5 Cowen, 144.

The opinion of the court was delivered by

ISHAM, J. The plaintiffs' right to the property for which this action is brought, depends upon the title of B. & H. Boynton, under their bill of sale from Sanborn & Catlin. As against the Boyntons the plaintiffs' title has not been disputed. But it is insisted that the Boyntons had no title to this property, and consequently could convey none to the plaintiffs, and that it was competent for the defendants to introduce parol evidence showing that the sale, from Sanborn & Catlin to the Boyntons, was made upon certain conditions, which having never been performed, the property never passed from them. If the testimony offered by the defendants is admissible, there is no doubt such would be its effect; for it has been frequently decided in this State, that under a conditional sale or contract, the general property never passes, and when the payment of the stipulated price, under such a sale, is made a condition precedent, the payment must be made before the title vests in the purchaser. *Bigelow* v. *Huntley,* 8 Vt. R. 151. *Smith* v. *Foster,* 18 Vt. R. 182.

Davis & Aubin *v.* Bradley & Co.

For the purpose of showing the title of the Boyntons to this property, and their right to sell the same to the plaintiffs, the bill of sale executed on the 2d of June, 1848, by Sanborn & Catlin to B. & H. Boynton, was introduced in evidence.   There is no ambiguity on the face of this instrument.   It is full and express in all its provisions, and contains an absolute and unconditional transfer of forty-five sacks of wool by Sanborn & Catlin to the Boyntons, twenty-one sacks of which is the subject of this suit.   The Boyntons are advised by that bill of sale that the wool was shipped to Messrs. Bradley & Co., at Burlington, subject on its arrival to their order, and of which we find they immediately after took possession.   The notes to be given for the wool are referred to, the amount specified for which each are to be given, and when to be made payable.   It contains no provision that the delivery of the notes was to be made before the property passed to the Boyntons, or that the wool was to remain the property of Sanborn & Catlin, until the notes were delivered.   But on the contrary, the bill of sale passes an immediate and vested title to the wool, in the Boyntons, with the absolute right of possession, under the directions given to the defendants, as wharfingers, to hold the property *subject to their order.*   It is manifest also from the instrument itself, that the parties intended that such should be its effect, for in a postscript to the instrument, a request was made so late as the 11th of June, and after part of the wool had been received, " that the notes for the wool *be forwarded soon,* as the three months note was wanted for use."   At this period, *time was given* for the delivery of the notes, with the limitation, however, that it be done soon. This limitation is inconsistent with the idea, that they were to retain a title to the wool as security for the delivery of the notes, and is consistent with the legal effect of the instrument, that the title vested at the time of the sale, and reliance placed on the assurances of the party for the subsequent delivery of the notes. When, therefore, the defendants offered to prove that the sale on the 2d of June, 1848, was conditional—that part of the notes were to be signed, not only by the Boyntons, but also by some other responsible persons, and that the title to the wool was to remain the property of Sanborn & Catlin, until the notes were furnished,—they were offering to prove a contract, in many important particulars, different from that stated in their bill of sale.

It contradicts its specific provisions, by making that conditional, which is absolute on its face. It adds to the contract of sale, other stipulations and provisions not mentioned or referred to in the instrument, not only in making the delivery of the notes a condition precedent, but requiring them to be executed, with other security, all of which essentially changes the legal effect and operation of the bill of sale. If this instrument is governed by the same principles that regulate other written contracts, the admission of the testimony would plainly violate that general rule of evidence, that parol testimony cannot be received to contradict, add to, or vary the terms of a written instrument. The authorities are quite uniform in placing these bills of sale on the footing of other written contracts, as being equally unaffected by parol testimony. They were so treated in the case of *Read* v. *Wood,* 9 Vt. R. 285. The court there say, " that whenever there is a sale, and a bill " of sale, or sale note is given, such bill of sale is the evidence of " the contract, and cannot be varied. It is the legitimate and " proper evidence of the contract and of the terms and conditions " thereof," and the party was not permitted to prove by parol, a warranty of goods, as it added a provision to the contract not therein mentioned. In *Lane* v. *Neale,* 2 Stark. R. 105, it was held that parol testimony could not be received to show that other articles of personal property were included in the sale, as they were not mentioned in the sale note. Lord Ellenborough there says, " that the bill of sale must be considered as the final contract be- " tween the parties." In *Mumford* v. *McPherson,* 1 Johns. R. 413, it was held that parol evidence was inadmissible to prove other provisions in a contract of sale, not mentioned in the bill of sale. THOMPSON, J., remarked " that the contract between the parties " was reduced to writing, and contained in the bill of sale, and " recourse must be had to that instrument to ascertain its extent. " The writing must be considered as the evidence of the agreement, " and everything resting in parol becomes thereby extinguished." No language can be more emphatic or applicable to the case under consideration, than this. And if in those cases, such testimony was inadmissible to prove stipulations upon which the bill of sale was silent, it would obviously be inadmissible in this case, where it contradicts its express provisions, adds to it stipulations not there mentioned, and changes its legal character and effect. Such

is the rule as between the parties to the instrument, and it derives additional force when it is offered against a third party who has made advances upon the property, relying upon the good faith of the parties in the execution of the instrument.

If, as contended by counsel, this instrument was nothing more than a memorandum of the property sold, and if the parties did not intend to put the evidence of their contract and sale, in writing, the admission of this testimony could be urged with greater propriety. It was upon this principle that the case of *Allen* v. *Pink*, 4 Mes. & Wels. 145, was decided, and upon this ground only can the cases of *Bradford* v. *Manly*, 13 Mass. R. 142, and *Boormon et al.* v. *Johnson*, 12 Wend. 566, be sustained. The principle of those cases can have no application to this, for this instrument is clear and specific in setting forth a contract, the parties thereto, its subject matter, the property sold, the price and manner of payment, as well as the terms of the sale. To defeat the legal operation of such an instrument, and divest a party of his title to property so transferred, by the introduction of parol testimony, would be a violation of established rules of evidence.

There is another view of this subject that renders the admission of this testimony quite objectionable. Sanborn & Catlin have placed this property in the possession of the Boyntons by their directions to the defendants, as wharfingers, to hold the same, subject to their order, and with this order they have executed and delivered to them, a bill of sale, affording the highest evidence of absolute and unconditional ownership. On the strength of this bill of sale and possession, the Boyntons have obtained the receipt of the defendants, as forwarding merchants, for the tranportation of this property to the plaintiffs, at Boston, on its consignment to them. The execution of this receipt by the defendants, as forwarding merchants, and its delivery to the plaintiffs, was a constructive delivery of the property to them, as much so as the indorsement of a bill of lading. *Gardner* v. *Howland*, 2 Pick. R. 599. 1 Smith's L. C. 752, *Lukbarrow* v. *Mason*, and notes. With this evidence of title and possession in the Boyntons, *proceeding from the act of Sanborn & Catlin*, and with the evidence of consignment and delivery to the plaintiffs, they have accepted the same, and paid the drafts of the Boyntons upon them, on its account, for its value. It will operate as a *great fraud on the plaintiffs*, if they are compelled

not only to lose this property, but also the money advanced, by testimony showing that this absolute bill of sale was untruly executed, and that another agreement in parol, was made at the same time, under which they are to be divested of that title to this property, which the bill of sale on its face, purports to convey. Such evidence is inadmissible on the ground of fraud, as well as contradicting the terms of a written instrument.

*Sanborn & Catlin* are concluded *by their acts*, from denying the title and right of the Boyntons to this property, by the execution of their bill of sale, and order for the delivery of its possession. *The Boyntons* are equally concluded, by their consignment of the property to the plaintiffs, and their drafts on them on its account, for its value. *The defendants*, also, are concluded from denying the plaintiffs title to the property and their right to its immediate possession, by the execution of their receipt for the same, as forwarding merchants, therein acknowledging to have received the property of the Boyntons, to be forwarded by them to the plaintiffs, at Boston. So far as the plaintiffs are concerned, the acts of all the parties operate as an *estoppel in pais*, preventing them from making any claim to this property, even, if as between the Boyntons and Sanborn & Catlin, the property was wrongfully disposed of by the Boyntons. Thus in *Pickering* v. *Rusk*, 15 East. R. 38, where the owner of hemp caused it to be entered on the books of the wharfinger, in the name of the broker, who was its purchaser for him, the owner was held bound by an unauthorized sale by the broker to another, on the ground *that the entry on the books of the wharfinger, was by the directions of the owner*, and was a fraud on the purchaser, unless it was intended that he should be authorized to deal with the property as his own. Lord Ellenborough remarked, " That strangers can only look to the acts of the parties, and " to the external *indicia* of property, and if a person authorize an-" other to assume the apparent right of disposing of property in " the ordinary course of trade, it must be presumed that the appar-" ent authority is the real authority. That if the plaintiff intended " to retain the dominion over the hemp, he should have placed it " in the wharfingers books *in his own name*." So in the case of *Dyer* v. *Pearson*, 3 Barn. & Cress. R. 38, ABBOTT,. Ch. J., remarked, " That it should have been left to the jury to say whether " the plaintiff had *by his own act*, enabled Smith (the agent) to

" hold himself out to the world as having not the possession only,
" but the property.    For if *the real owner* of goods suffer another
" to have possession of his property, and of those documents which
" are the *indicia* of property, then perhaps, a sale by such person
" would bind the true owner."    This doctrine has a  very direct
application to this case.    For it was the *act of Sanborn & Catlin*
that furnished the  Boyntons with this absolute bill of sale, giving
them the  highest evidence of ownership and right  of possession,
and upon the strength of which the plaintiffs have purchased the
property and made the advances.

Formerly the mere acts, or admissions of a party, when not un-
der seal, or of record, were not considered as estoppels, and had no
other weight than that of evidence, more or less  strong, as might
be considered by the court or  jury.    " But it has been properly
" observed that the recent decisions of the courts, both in this
" country and in England, have given a much broader scope to the
" doctrine of estoppels *in pais*, than that which it had formerly, and
" have established, that whenever an act was done, or statement
" made, which cannot be contravened or contradicted without fraud
" on his part, or injury to others, whose conduct has been influ-
" enced thereby, the character of an estoppel will attach to that,
" which otherwise would be matter of evidence, and it will become
" binding, *even in opposition to proof of a contrary nature.*"    2
*Smith's Lea. Cas.* 561, and cases there cited.    And this principle
is of general application where there is — 1st, An act or admission
inconsistent with the evidence offered, or title set up, — 2d, An act
of the other party influenced or  induced by such act or admission,
and — 3d, An injury resulting therefrom, by permitting the act or
admission to be disproved.    Where these several matters unite,
the links in the chain are formed for the application of the doctrine
of estoppel *in pais*.    *Dazell* v. *Odle*, 3  Hill R.  219.    *Picord* v.
*Sears et al.*, 6  Ad. &  El.  469.    *Gregg* v.  *Wells*, 10 Ad. &  El.
54.    *Dameys* v. *Field*, 4 Met. R. 384.    *Hatch* v. *Kimball*, 16 Maine
R. 146.    17 Vt. R. 449.    *Hicks* v.  *Cram*, 2  Smith's Lead. Cas.
562, in notes.

These facts all exist, and these various matters unite, in the case
under consideration.    For in the first place, there is the act of San-
born & Catlin, in executing the bill of sale, and the delivery of the
order, with the act of the Boyntons in making the consignment of

this property to the plaintiffs, and the act of the defendants, as forwarding merchants, in executing their receipt, and agreeing to transport the property to the plaintiffs, at Boston. In the second place, there is the act of these plaintiffs, in accepting the property consigned, and paying the drafts that were made on its account, all of which are inconsistent with the title and claim now set up, and offered to be proved. And in the third place, there is the damage that will be sustained by the plaintiffs in allowing those facts to be disproved, in the loss of this property, as well as the money advanced. In preventing the party from making such claim, by the rejection of testimony offered, the equity and justice of the case was evidently sustained.

The case of *Mc Combie* v. *Davis*, 6 East. R. 583, is not inconsistent with the principles here decided, as in that case, the evidence of title was *wrongfully obtained*, and *without the act of the owner of the property*, and therefore, he shall not be estopped.— And of this character are those cases where sales have been made without authority, or with the possession of those evidences that are not *proper documentary evidences of title*. But where one has the proper documentary evidence of title, *given by the owner of the property*, he is bound by whatever disposition is made of it. In such case there is force and propriety in the suggestion, that where one of two parties must suffer from an unauthorized act, the loss should fall upon the owner who has intrusted the party with the possession of his property and the evidence of title, and thereby enabled him to commit a fraud, and should not be visited on the vendee, who has acted in good faith, and with proper caution. We think, therefore, the testimony offered was properly rejected, and that the judgment of the county court must be affirmed.