## JOSEPH J. HUNTER
### v.
## JAMES MATHEWSON ET AL.

*Factor's Lien—Advances—Waiver—Notice—Sales—Question for Jury—*
*Evidence—Symbolical Delivery—Instructions.*

1.   A factor who has made advances in the same line of business to the
consignor, is entitled to a lien on stock consigned to him, unless a sufficient
reason to the contrary is shown.

2.   In the case presented it is *held:* That the question whether a certain
transaction between the consignor and the plaintiffs, who were third par-
ties, amounted to a sale, was for the jury; that the question whether the
consignee, the defendant herein, was a *bona fide* purchaser, was not
involved; that evidence tending to show an agreement between the con-
signor and consignee, prior to the shipment, for the payment of said
advances out of the proceeds, is competent; that, in order to lay the proper
foundation for an implied waiver by the defendant, it was necessary that
the evidence should tend to show that he had notice of the plaintiffs' inter-
est in the cattle, or proceeds; and that certain of the instructions were
erroneous.

3.   Where a sale is actually intended, and is made in the usual course of
business, an invoice, or other instrument, which specifies and enumerates
the property sold, may be substituted for a bill of lading in constituting a
symbolical delivery.

4.   A factor, in enforcing his lien, occupies in no sense the position of a
purchaser.

5.   It is improper for the court, in giving instructions, to pass upon the
facts of the case.

[Opinion filed August 8, 1888.]

APPEAL from the Superior Court of Cook County; the
Hon. JOHN P. ALTGELD, Judge, presiding.

Hunter v. Mathewson.

This was an action upon the common counts for money had and received, brought by appellees, Mathewson and Haidle, who were engaged in farming and stock business at Stanton, Nebraska, against appellant Hunter, who was engaged as a live stock commission merchant at the Union Stock Yards, Chicago, to recover the sum of $1,311.69, as part of the proceeds of certain live stock shipped May 2, 1885, by one C. Abrams, by rail, from Stanton aforesaid, to said Hunter, as such commission merchant, to be sold by him.

This case was tried by jury, under the plea of general issue, and evidence was given on behalf of the plaintiffs tending to show that May 1, 1885, at Stanton aforesaid, they sold the cattle in question to said Abrams, he paying therefor $300 in cash, and at the same time giving to them for the balance of the price a draft on defendant Hunter, payable to the order of plaintiffs, for $5,166, which they indorsed to the Citizens Bank at Stanton for collection. The evidence tended to show that the cattle were delivered by plaintiffs to Abrams, and that the latter delivered them at Stanton aforesaid to the railroad company for shipment to said Union Stock Yards, said railroad company giving him a receipt and contract therefor, made in duplicates, a copy of one of which, indorsed by Abrams, was delivered to plaintiffs, to which said draft was attached. It was as follows:

"LIVE STOCK CONTRACT.

"Copy of duplicates issued at request of shipper.

"FREIGHT OFFICE TREMONT, ELKHORN & MISSOURI VALLEY R. R. Co.

"STANTON, NEB., May 2, '85.

"Received of C. Abrams 5 cars cattle, to be delivered at U. S. Yards, Chicago, Ill., at special rates, being tariff rates for cattle or hogs. In consideration of which, and for other valuable considerations, it is hereby mutually agreed that said company shall not be liable for loss by jumping from the cars, delay of trains not caused by negligence, or any damage said prop-

| No. of way bills. | Nos. of cars. | No. of animals in each car. |
|---|---|---|
| 3 | 2467 | 18 |
| 4 | 17375 | 17 |
| 5 | 2213 | 17 |
| 6 | 3607 | 18 |
| 7 | 3591 | 18 |

erty may sustain except such as may result from a col lision of the train with other trains, or when the cars are thrown from the track in course of transportation, and in this case the company, upon whose road the accident, loss or damage shall occur, shall be liable therefor, and no suit shall be brought or claim made against any other company forming a part of the route, for such loss or damage (it being expressly understood and agreed that the responsibility of this railway company shall cease upon delivery of said property to its connecting line, unless otherwise agreed to in writing, and signed by the respective parties hereto), and that the rules and regulations printed above are an essential part of this contract.

"C. E. WILBUR, *Agent.*
"C. ABRAMS, *Owner.*"

On the back of the above paper is the following:

"Parties actually in charge of and accompanying within named stock are required to write their own name in ink here.
"C. ABRAMS.

"Parties in charge have written their own names above.
"C. E. WILBUR, *Agent,*
"Stanton, Neb."

"NOTE: Agents will permit only the signature of owners or *bona fide* employes, who accompany the stock, to be entered on back of contract, without regard to passes allowed by number of cars, and run a pen through remaining lines.

"NOTE: Agents will in all cases send to the general freight agent, Missouri Valley, a duplicate of all live stock contracts made by them. The duplicate must be signed by the owner in the same way as the original."

The plaintiffs delivered this copy with said draft attached to said bank for collection.

The evidence tended to show that the railroad company made out a way bill of the cattle, showing said Abrams to be the consignor and the said defendant the consignee thereof, in which the name of plaintiffs did not appear; that said Abrams came with the cattle in his charge to the Union Stock Yards, where he assisted in putting them into defendant's possession

Hunter v. Mathewson.

to be sold by him; and the evidence tended to show that the defendant had no notice of said draft, of plaintiff's claim, or of any of the transactions between the latter and Abrams until he had sold the cattle and received the proceeds of them.

The defendant having shown that Abrams was indebted to him in the sum of $1,311.69, for advances by the former as such commission merchant, made in former transactions, to said Abrams as shipper of stock, offered to show that a little prior to the shipment of the stock in question it was agreed between them that defendant should have his pay out of the proceeds of the next shipment made. But the court, on objection of plaintiff's counsel, decided that such evidence was immaterial and incompetent and excluded the same; to which defendant duly excepted.

There was evidence on behalf of plaintiffs tending to show that the transactions between the plaintiffs and Abrams at Stanton respecting the live stock contract and draft, were in accordance with the usual course and forms of the business; but as to that the evidence was conflicting.

The evidence tended to show that the cattle arrived at the Stock Yards in the morning of May 6, 1885, were immediately delivered to defendant and sold by him, as commission merchant, before noon of that day; that defendant appropriated sufficient of the proceeds to pay Abrams' indebtedness to him, and, although notified of said draft after the sale, he refused to pay anything upon it, but paid the balance over to Abrams, who paid it to the plaintiffs. The controversy was, therefore, confined to the amount so retained by defendant. The court gave, on behalf of plaintiffs, the following instructions:

"INSTRUCTIONS FOR PLAINTIFFS.

"This is an action of assumpsit by which the plaintiffs seek to recover the sum of $1,311.69, being the balance of the net proceeds of the sale by defendant of certain cattle at the Union Stock Yards near this city, on the 6th day of May, 1885.

"It appears by the evidence that shortly prior to the 2d day of May, 1885, the plaintiffs sold to one Abrams a lot of cattle at Stanton, Nebraska.

" Thereafter on the 2d day of May, 1885, said cattle were shipped by said Abrams in his own name to defendant at the Stock Yards. He paid plaintiffs on account of the price of these cattle the sum of $300, and to provide for the balance of the price, gave them a draft on the defendant for the sum of $5,166, and also what is styled a copy of the duplicate bill of lading or live stock contract which has been introduced in evidence.

"The court charges you that the effect of this arrangement as between Abrams and Mathewson and Haidle, the plaintiffs, was to vest in them an interest in, or right to the proceeds of those cattle to the extent of this draft. Whether or not they have this right as against the defendant, depends upon other considerations which will be hereafter adverted to.

" It appears that Abrams accompanied the cattle to the Stock Yards where they arrived on the morning of May 6th, about 5:30 o'clock, and were shortly thereafter delivered to the defendant, and sold by him as a commission man in the usual course of business in the forenoon of that day, the net proceeds, deducting commissions and usual charges, being $5,116.50, which were passed to the credit of Abrams on defendant's books.

"It also appears that at this time Abrams was indebted to the defendant in the sum of $1,311.69, a balance which had arisen mainly by reason of his overdrafts on previous shipments. This balance defendant, claiming a previous agreement on his part warranting this, deducted from the proceeds of the sale of the cattle, and, on the 7th of May following, mailed him a draft for the balance of $3,804.81, which he turned over to the plaintiffs. Now, the question for you to try is whether, on the evidence, the defendant is a *bona fide* purchaser of the cattle shipped to him as shown in evidence to the extent of his demand against Abrams. That is, whether by any agreement or arrangement with Abrams, he acquired an interest in these cattle or their proceeds without knowledge of the fact that he was not entitled to such proceeds, or knowledge or notice of such facts or circumstances as, if brought to the attention of men of ordinary prudence similarly situated

and followed up with ordinary care or diligence, would have led to that knowledge.

"Therefore, unless you find from the evidence that defendant believed and was, under all the circumstances, justified in believing that the cattle were the property of Abrams or that he had a right to the proceeds thereof, and also unless you find that he attempted to vest in defendant an interest in these cattle, claiming them as his own, your verdict will be for the plaintiffs for the said sum of $1,311.69 with interest thereon from the 6th of May, 1885, at the rate of six per cent. per annum.

"If you find from the evidence that when the cattle arrived and were sold he urged defendant to pay the draft and protested against his deducting his indebtedness to him from the proceeds of the cattle, then the defense fails in both points."

No other instructions were given. The jury found for plaintiffs assessing their damages at $1,463.93, and the court, overruling defendant's motion for a new trial, gave judgment on the verdict, and the defendant appealed to this court.

Mr. EDWARD R. SWETT, for appellant.

Messrs. FLOWER, REMY & HOLSTEIN, and HARRISON MUSGRAVE, for appellees.

McALLISTER, J. Abrams being indebted to defendant Hunter upon a general balance for advances made by the latter to the former in the same line of business, Hunter would, if no sufficient reason to the contrary were shown, have been entitled to a lien on the cattle in question for such advances, when taken into his possession with the assent of Abrams, to be sold by Hunter as such commission merchant, and upon the proceeds of the cattle, the moment they were received. 1 Jones on Liens, Secs. 418, 468, and cases in notes.

The plaintiffs, in order to establish their right to said proceeds and defeat said lien, gave evidence tending to show that they sold and delivered the cattle to Abrams; that he paid

them of the purchase price $300 in money and for the balance gave his draft on the defendant, set out in the statement of the case, then delivered to them a copy of one of the duplicates of the live stock contract which the railroad company and Abrams had entered into, indorsed in blank by the latter, but in which the plaintiffs are in no wise mentioned.

The case seems to have been tried partially upon the theory that the transaction amounted to a sale and symbolical or constructive delivery of the cattle by Abrams to the plaintiffs below, and had the effect of passing to the latter the absolute title to the cattle, and partially upon the theory that the plaintiffs had acquired only such interest in the cattle or proceeds as would prevail over the defendant's lien, by showing notice to him of their rights, and an implied waiver on his part of his lien.

In order to lay the proper foundation for an implied waiver on the part of defendant it was necessary that the evidence as to facts and circumstances tended to show that the defendant had notice of plaintiffs' interest in the cattle or the proceeds, before, or at the time of taking possession of them for the purpose of selling them. We think the case of Darlington v. Chamber'ain, 20 Ill. App. 443, and all the authorities there cited sustain that view.

The counsel for appellant seems to suppose that unless the railroad company issued to Abrams what is known as, or equivalent to, a bill of lading, in which the name of the consignee is mentioned, there could be no such absolute sale and symbolical or constructive delivery of the property as would give plaintiffs priority over defendant without actual notice to him. A bill of lading, or its equivalent, is not indispensable. If a sale was actually intended and made in the usual course of business, an invoice or other instrument which specifies and enumerates the property sold, may be substituted for a bill of lading in constituting a symbolical delivery. Gibson v. Stevens, 8 How. 384; Davis v. Bradley, 24 Vt. 55; Gardner v. Howland, 2 Pick. 599; Davis v. Bradley, 28 Vt. 118; Holbrook v. Wight, 24 Wend. 168.

The question whether or not the transaction between Abrams

Hunter v. Mathewson.

and the plaintiffs was a sale, was a question for the jury, involving the fact of intention of the parties, and whether it was in accordance with the usual course of business, as to which there was a conflict of evidence. The transfer of the live stock contract did not pass the title by its unaided operation, and could operate only as evidence of a sale and a symbolical transfer of possession. Smith's Lead. Cas., Vol. 1, Part 2, p. 1206, Lickbarrow v. Mason.

It was for the jury to look at all the circumstances and to determine the character of the transaction. Holbrook v. Wight, *supra.* But as appears by the instructions for plaintiffs, set out in our statement of the case, the court took all those questions from the jury, as was done with nearly all the questions of fact in the case, and decided for itself the character and effect of the transaction, with no facts whatever submitted to the jury as the basis of that conclusion.

In the sixth paragraph of the said instructions the court directed the jury that the question for them to try was whether, on the evidence, the defendant was a *bona fide* purchaser of the cattle shipped to him as shown in evidence, to the extent of his demand against Abrams.

No such question was in issue upon the trial. A factor enforcing his lien stands in no sense in the position of a purchaser. Such a direction was calculated to mislead and confuse the jury.

The last paragraph seems to be independent of all others, and reads thus: "If you find from the evidence that when the cattle arrived and were sold, he (Abrams) urged defendant to pay the draft and protested against his deducting his indebtedness to him from the proceeds of the cattle, then the defense fails in both points."

Unless it be the law that the principal may defeat the factor's lien after it has attached, by his arbitrary directions to pay the proceeds to somebody else, that instruction was erroneous. We are aware of no such rule of law.

The practice of giving instructions in which the court assumes to pass upon the facts of the case, is not sanctioned, but condemned by the Supreme Court in repeated instances. Rail-

road Co. v. Moranda, 108 Ill. 576; Town of Evans v. Dickey, 117 Ill. 291.

We are of opinion that in one aspect of the case the evidence offered by the defendants to the effect that prior to shipping the cattle in question it was agreed between Abrams and defendants that defendants might be paid their advances out of the proceeds, would become material. It was therefore competent. For the errors pointed out, the judgment of the court below must be reversed and the cause remanded.

*Reversed and remanded.*