## ELLIOT & BOYNTON *v.* JOHN BRADLEY & CO.

*Factor.  Lien.  Change of possession.  Attachment.*

When goods are consigned to a factor, under an agreement that he shall sell them and apply the proceeds to repay advances previously made by him to the consignor, he must, in order to acquire a valid lien upon the goods, as against the creditors of the consignor, have the actual or constructive possession of the goods.

An agreement was made between a manufacturer of cloth in this state and the plaintiffs, who were commission merchants in New York, by which the manufacturer was to send his cloth to the plaintiffs for sale on commission, and was to draw upon them in advance of the sales, and also in advance of sending the cloth, if necessary, upon sending the invoices of cloth forwarded, or to be forwarded, and the plaintiffs were to apply the avails of the sales to repay their advances. Under this arrangement the consignor forwarded to the plaintiffs, from time to time, invoices of the cloth sent, and to be sent, and the cloth was then sent to forwarding merchants at Burlington, and was by them sent to the plaintiffs as soon as was convenient. The drafts were drawn and the acceptances charged and sales credited upon general account. No bill of lading was sent to the plaintiffs, but shipping lists were sent by the forwarding merchants to their agents in New York, describing the consignor, the consignees, and the marks upon the goods, in order to guide the agents in delivering the goods to the consignees. And it was held, that the goods, after being sent to the forwarding merchants, and while upon their transit between Burlington and New York, remained at the risk and subject to the control of the consignors, and liable to attachment by their creditors.

TROVER for nine boxes of cloth. Plea, the general issue, and trial by jury, September Term, 1849,—BENNETT, J., presiding.

The cloth in question was originally the property of B. & H. Boynton, who were manufacturers at Hinesburgh, Vermont. Some years previous to the transactions in question B. & H. Boynton made an arrangement with the plaintiffs, who were commission merchants in the city of New York, under which B. & H. Boynton were to send their cloth to the plaintiffs for sale on commission, and were to draw on them in advance of the sales, and also in advance of sending the cloth, if necessary, upon sending invoices of the cloth forwarded, or to be forwarded; and when the cloth should be sold, the plaintiffs were to apply the avails to pay themselves for their ad-

XXIII.    28

vances. Under this arrangement B. & H. Boynton had continued ever since to send cloth to the plaintiffs and to draw on them at short time. The usual course of the business was, for B. & H. Boynton to send to the plaintiffs, by mail, invoices of the cloth forwarded and to be forwarded. The cloth was then sent to the defendants, at Burlington, who were storage and forwarding merchants there, and thence by water to New York, as soon after the invoices were sent, during the season of navigation, as was convenient; and during the winter it was sent by team to Troy, from Hinesburgh, as often as they could find loading for the teams back; but during the winter season the cloth, of which invoices had been sent, and for which drafts had been accepted by the plaintiffs, accumulated in considerable quantities in the store house of B. &. H. Boynton. The drafts were drawn upon a general account, and not in respect of particular cloth, and, when accepted, were charged to the general account of B. & H. Boynton, and the sales, when made, were credited in the same general account. The invoices of the cloth in question were written and mailed in part in March, and in part in June, 1848, and each included other boxes of cloth, which had been sent to and received by the plaintiffs, before the boxes in question were shipped. The boxes of cloth in question, marked " Elliott & Boynton, New York," and numbered, were sent to Burlington by B. & H. Boynton, in June, 1848, to the defendants, to be forwarded in the usual course to the plaintiffs, at New York, and in pursuance of the general arrangement between the plaintiffs and B. & H. Boynton. Seven boxes of the cloth in question were soon after sent by the boat Empire, and the remaining two boxes were sent by the steam boat United States. Immediately after this, B. & H. Boynton failed, and the defendants, who were creditors of B. & H. Boynton, sent on and overtook the Empire between Burlington and Whitehall, on the Vermont side, and attached the seven boxes upon two writs in their favor against B. & H. Boynton and B. Boynton; and on the same day the defendants caused the remaining two boxes, which had been conveyed to Whitehall by the steam boat, to be brought back by the same boat to Burlington, and there attached them on the same writs. At the time the cloth in question was sent, B. & H. Boynton had overdrawn the amount of sales and of cloth in the hands of the plaintiffs, and including the cloth in question, to a large

Elliott et al. *v.* Bradley et al.

amount, which was charged in their general account; but this fact was not then known to B. & H. Boynton. The boxes of cloth in question were marked, and entered on the shipping list, and received and sent, in the same manner that the cloth had always been, which was sent by B. & H. Boynton to the plaintiffs, under the arrangement above stated, and no special instructions or notice were given in regard to them to the defendants, and the defendants had no instructions from or communications with the plaintiffs. The boxes were entered upon the shipping list, " B. & H. Boynton to Elliott & Boynton, New York ; " and the shipping lists were sent to New York by the captain of the boat, and retained by the agents of the forwarding line there, and not delivered to the consignees,—being used only as a memorandum of the amount, character and address of the freight on board, and as a guide to deliver the freight at New York. Subsequently to the attachment by the defendants the cloth in question was attached by the Bank of Burlington, on two writs in their favor against the plaintiffs, upon which writs judgments were duly recovered in favor of the bank for an amount exceeding the value of the cloth, and the cloth was duly charged in execution and advertised for sale, and remained so advertised, the day of sale not having arrived, at the time of trial. The writs in favor of the defendants, upon which the cloth was attached, were duly returned, and a judgment was recovered upon the one against B. Boynton, and the property duly charged in execution, and the other suit was still pending in court.

Upon these facts the defendants claimed,—1. That the property in the cloth had never passed from B. & H. Boynton to the plaintiffs, and that the plaintiffs, at the time of the attachment, had no valid lien upon the cloth, such as would prevent its attachment by the creditors of B. & H. Boynton, or enable the plaintiffs to maintain this action ;—2. That even if there was a valid transfer of the cloth to the plaintiffs, it was not accompanied by such a change of possession as was necessary, to protect it from attachment by the creditors of B. & H. Boynton ;—3. That the plaintiffs, at most, could recover only nominal damages, as the property had been subsequently taken upon executions against the plaintiffs for an amount exceeding its value.

The jury, under the direction of the court, having assessed the

value of the nine boxes of cloth at $1436,88, and the value of the two boxes sent to Whitehall at $333,05, and returned a verdict for the plaintiffs in the alternative, the court, *pro forma*, rendered judgment for the plaintiffs for the value of the nine boxes. Exceptions by defendants.

*D. A. Smalley* and *E. J. Phelps* for defendants.

1. Under the circumstances in this case, the factor's lien does not attach, until he receives actual possession of the goods. *Kinlock* v. *Craig*, 3 T. R. 119, 783. *Nichols* v. *Clent*, 3 Price 422. *Mitchell* v. *Ede*, 39 E. C. L. 260. *Bruce* v. *Wait*, 3 M. & W. 14. *Jaquet* v. *Morris*, 5 E. C. L. 283. *Patter* v. *Thompson*, 2 M. & S. 349. *The Frances*, 8 Cranch 418, [3 U. S. Cond. R. 191.] *Ryberg* v. *Snell*, 2 Wash. C. C. 403. Nor can the delivery of the goods by B. & H. Boynton to a general carrier, under the circumstances, be deemed a delivery to the plaintiffs, or operate to give them either actual or constructive possession of the property; to this effect are all the cases above cited. And even when the consignee is a purchaser, if, by the contract between the parties, express, or implied, the goods were at the risk of the consignor during transmission, the property remains in the consignor, until actual delivery. *Ludlow* v. *Brown*, 1 Johns. 1. There are cases, where the transfer to the consignee, upon consideration paid, of a regular bill of lading, which is treated as carrying by its negotiation the constructive possession of property, has been regarded as enabling the consignee's lien to attach. *Haille* v. *Smith*, 1 B. & P. 563. *Anderson* v. *Clark*, 9 E. C. L. 300. *Walley* v. *Montgomery*, 3 East 585. No bill of lading, however, existed in the present case; and no such effect has ever been given to a mere sending, by the consignor, of an invoice of the goods forwarded. *Evans* v. *Martel*, 12 Mod. 156.

2. If the plaintiffs had such a lien, as would entitle them, under the mercantile law, to maintain this action, was there such a change of the possession of the goods, as would protect them against the creditors of B. & H. Boynton? This question must be decided under the rule established in this state, which requires a change of possession which is visible, notorious and continued. The forwarders and carriers, into whose hands the goods passed, were in no

Elliott et al. *v.* Bradley et al.

sense the agents of the plaintiffs, nor did they act under any contract with the plaintiffs. The goods were at the risk, expense and control of B. & H. Boynton, and in the process of transmission for their benefit, and in the ordinary course of their business. The possession of the carrier and forwarder was therefore the possession of B. & H. Boynton, until the goods reached New York. *Russell* v. *Fillmore*, 15 Vt. 130.

*A. Peck* and *C. D. Kasson* for plaintiffs.

Whether the consignee be the purchaser of the entire property, or a mere acceptor on the faith of the property, and so having a lien only, his interest is perfected and becomes absolute, as to the right of possession and control, against every one, the moment the goods are shipped, or pass, in transit to their destination, into the hands of the carrier, or any third person, and they are not subject to be attached as the property of the bailor. *Burdick* v. *Murray*, 3 Vt. 307. *Badlam* v. *Tucker*, 1 Pick. 399. *Scott* v. *Scholey*, 8 East 467. Story on Ag. §§ 111, 373–376. So the consignee, or special property man, may maintain trover. Bul. N. P. 33. *Arnold* v. *Jefferson*, 1 Ld. Raym. 276. *Fowler* v. *Down*, 1 B. & P. 44. *Morrison* v. *Gray*, 2 Bing. 260. And when the consignee accepts, or advances money, on the credit of the shipment, or on the security of the goods, before they are shipped, the goods rest in him, so far as to give him a valid lien, the moment they are shipped and are *in transitu* and marked in his name. 2 Saund. Pl. & Ev. 36, 38. *Rice* v. *Austin*, 17 Mass. 203. Story on Ag. §§ 377, 378. *The Frances*, 8 Cranch. 418. 9 E. C. L. 300. 4 East 211. 3 B. & P. 582. 1 Ib. 563. *Holbrook et al.* v. *Wight*, 24 Wend. 169. *Hammond* v. *Barclay*, 2 East 227. *Hart* v. *Saltby*, 3 Camp. 528. The cases all seem to turn on the question, whether there has been a delivery to the consignee, so far as to authorize him, as between him and the carrier, to control the property, (subject, however, in all cases, to the right of stoppage· *in transitu.*) In this case, the plaintiffs, having accepted and paid to the value of the cloth, had in law and in fact the right to control the goods; and as, by the marks on the goods and the bills of lading, B. & H. Boynton were wholly unknown, and only the consignees known to the carrier, it was such an ostensible change of possession, as to protect the consignees.

The opinion of the court was delivered by

KELLOGG, J. The jury, under the direction of the county court, having returned a special verdict, and the court having rendered a judgment thereon for the plaintiffs, the question is now presented, are the facts found by the jury sufficient to sustain the judgment?

The plaintiffs' right to recover must depend upon the question, whether they had acquired a valid lien upon the goods in question, as against subsequent attaching creditors of B. & H. Boynton. For the case shows, and the same seems to be conceded, that the general property in the goods remained in the consignors, and that the only interest, the plaintiffs had in them, was that of a lien to secure them for advances made to the consignors, coupled with the right to sell the goods, pursuant to their agreement with B. & H. Boynton. To constitute such lien, it seems to be established by the current of authorities, that the consignors must have obtained either the *actual*, or at least the *constructive*, possession of the goods, at the time they were taken upon the defendants' attachment. Such is the doctrine of *Bruce* v. *Wait*, 3 M. & W. 14. *Kinlock* v. *Craig*, 3 T. R. 119. *Nichols* v. *Clent*, 3 Price 422. *The Frances*, 8 Cranch 418. Indeed, we are not aware of any adjudged cases, which are in conflict with this proposition.

There is a class of cases, in which, upon goods being shipped and a bill of lading taken, it has been held, that the title to the goods passes by the transfer of the bill of lading, and the possesssion of it by the consignee gives him a *constructive* possession of the goods. Such are the cases of *Haille* v. *Smith*, 1 B. & P. 563, and *Anderson* v. *Clark*, 9 E. C. L. 300. But in this case no bill of lading was taken and forwarded to the plaintiffs. Indeed, it does not appear, that any was taken. The goods were deposited in the store-house of the defendants by B. & H. Boynton, directed to the plaintiffs, at New York, in the same manner they had been accustomed to direct goods to the plaintiffs. The goods in question were entered in the shipping list " B. & H. Boynton to Elliott & Boynton ; " and this was forwarded to New York by the captain of the boat, not, however, to the plaintiffs, but to the agent of the defendants, and retained by him to guide him in the delivery of the freight. This cannot be regarded as equivalent to a bill of lading ; and if it were, there was no transfer or delivery of it to the plaintiffs, nor was it contemplated,

that it would be delivered to them.   Nor does the fact, that B. &. H. Boynton had previously advised the plaintiffs, by letter, of their intended consignment, accompanied by an invoice of the goods, and followed by a subsequent delivery of the cloth to the defendants, amount to such a constructive delivery to the plaintiffs, as gave them a lien upon the goods.   *Nichols* v. *Clent*, 3 Price 422.

It would seem, from the facts in the case, that the goods in question must have been shipped at the risk of the consignors, B. & H. Boynton, and consequently the delivery of the goods to the defendants was a delivery to them as agents of the shippers, and not of the consignees.   It was therefore competent to the consignors, at any time before actual delivery to the consignees, to countermand the goods and thereby prevent their lien from attaching.   *The Frances, ut supra.*

It is urged, on behalf of the plaintiffs, that their lien upon the goods attached, upon their being delivered to the defendants to be forwarded to the plaintiffs; and several cases are referred to, as sustaining the proposition.   We think, however, they afford it no support.   They are clearly distinguishable from the case at bar.   In *Rice* v. *Austin*, 17 Mass. 197, the timber was shipped on *account* and at the *risk* of the consignee; the *bill of lading* was forwarded to the consignee, and the carrier had applied to him and *taken his directions*, where to deliver the timber, before it was attached by the defendant; and this was held to be a sufficient delivery to the plaintiff.   It falls within the principle of *Anderson* v. *Clark*, 9 E. C. L. 300, and *The Frances*, 8 Cranch 418.   So in *Coxe* v. *Harnden*, 4 East 211, the goods were shipped on *account* and *at the risk* of the consignee, and a *bill of lading, indorsed* by the consignor, was transmitted to the consignee; and it was held, that the goods vested in the consignee upon the shipment.

In *Hammonds* v. *Barclay*, 2 East 227, a principal gave notice to his factor of·an intended consignment of a ship to him for sale, and in consequence drew bills on him, which the factor accepted.   The principal died, and his executors directed the captain to deliver the ship to the consignee, according to his former directions, which he accordingly did, and the factor sold the same; and it was held, that the factor had a lien, not only for the acceptances actually paid, but for acceptances not then due.   Here the consignee had *possession*

of the ship, and all the authorities agree, that when the property comes to his possession, his lien attaches. But in this case, the cloth in question was not shipped at the risk of the plaintiffs, nor had they any bill of lading of it, nor were the plaintiffs in the *actual* or *constructive* possession of the goods. It is therefore, in all its important features, unlike the cases above cited by the plaintiffs.

In. *Hart* v. *Saltby*, 3 Camp. 528, it was held, that where a purchaser ordered goods, the delivery of them to a carrier is sufficient to bind the contract, according to the statute of frauds, where the purchaser has been in the habit of receiving goods from the vendor by the same mode of conveyance. In that case, the goods, after delivery to the carrier, were clearly at the risk of the purchaser. The vendor had parted with all right to control them, and the carrier became the agent of the purchaser.

In *Holbrook* v. *Wight*, 24 Wend. 169, it was held by the court, that a factor, who has made advances upon goods consigned to him for sale, and which have been delivered to a third person to forward, has a lien upon the goods and may maintain an action against the bailee for non-delivery. This case would seem to be somewhat analogous to the case at bar; but still we think it falls short of sustaining the judgment below. It is worthy of remark, that in *Holbrook* v. *Wight*, the question, for whom the bailee held the goods, was deemed one of fact for *the jury*, who found, that he held them for the consignees. It was the turning point in the case. So in the present case, the important inquiry, and one which we think is decisive of the case, is, for whom did the defendants hold the goods in question,—for the consignees, or for the consignors and subject to their control?

We discover no facts in the case to justify the conclusion, that the consignors had parted with the right to control the cloth, and that the defendants held them for the plaintiffs and subject to their control. And in the absence of proof to that effect, it seems to us, that the judgment of the county court cannot be sustained.

Judgment of the county court reversed and case remanded.