## DAVIS & AUBIN *v.* JOHN BRADLEY & CO.

*Factor's lien upon consigned goods. Bills of lading and shipping receipts.*

To give a factor a lien upon goods consigned to, but not actually received by him, the consignment must be to him in terms, and he must have made advances or acceptances upon the faith of it.

B. & H. B. delivered to the defendants, who were storage and forwarding merchants, several sacks of wool, for which the defendants gave receipts, specifying that they were for the plaintiffs, or to be forwarded to the plaintiffs. These receipts were sent to the plaintiffs, and they, upon the credit of, and with reference to said wool, accepted drafts drawn upon them by B. & H. B. *Held*, that the plaintiffs thereby obtained the constructive possession of the wool, and had a lien upon it for the amount of their acceptances.

Consideration of the law respecting the transmission and endorsement of bills of lading and shipping receipts.

Where the forwarding merchant gives a shipper's receipt or inland bill of lading for goods shipped on board a boat on Lake Champlain, acknowledging to have received them to be forwarded to the consignees by name, and this is sent to the consignees, and they make advances upon the faith of it, the title and possesion of

the goods are thereby so far vested in the consignees, that they are not liable for the consignors' debts, or, if so, only subject to the consignees' lien for advances.

TROVER for thirty-one bales of wool. Plea, the general issue ; trial by jury, March Term, 1855,—PIERPOINT, J., presiding.

The wool originally belonged to Sanborn & Catlin, of Swanton, and was sold by them to B. & H. Boynton, of Hinesburgh, and forwarded to the defenants, who were storage and forwading merchants, at Burlington, early in the spring of 1848 ; and was attached by the defendants on a writ in their favor against B. & H. Boynton, on the 20th of June, 1848, and on one in favor of Vilas & Noyes against B. & H. Boynton, on the same 20th of June, 1848 ; and was left by the officer making said attachments in the possession of the defendants, where said wool remained until it was sold on the execution of the defendants, issued on the judgment obtained in the suit on which the attachment was made.

The plaintiffs, to sustain the issue on their part, introduced, among other papers, four receipts signed by the defendants, of which the following are copies,

" Received of B. & H. Boynton thirteen bales wool, to forward " Davis & Aubin, Boston, via Western Railroad.   Burlington, " May 30th, 1848."

" Received of B. & H. Boynton, June 9, 1848, six sacks wool, " weighing twelve hundred and eighty-five pounds, to be shipped " to Davis & Aubin, Boston.   Burlington, June 9, 1848."

" Received of B. & H. Boynton, twenty-one bales wool, to be " forwarded to Davis & Aubin, Boston.   Burlington, June 13, " 1848."

" Received in store, June 15th, 1848, of B. & H. Boynton, for " Davis & Aubin, Boston, two bales wool, by W. R. R. from Green- " bush."

and three drafts drawn by B. & H. Boynton upon the plaintiffs, in favor of Jedediah Boynton, at three months, one for $400, dated May 30, 1848, one for $500, dated June 5, 1848, and the other for $500, dated June 9, 1848, all of which the plaintiffs had accepted and paid ;—also, letters from B. & H. Boynton to the plaintiffs, dated May 30th, June 2d, June 10th, and June 13th, containing invoices of different lots of the wool, referring to the above receipts as enclosed, and advising the plaintiffs of the drawing of

the above drafts, &c.;—also, the shipping book of the defendants, showing that twenty-nine bales of said wool was shipped on board of the boat Empire, on Lake Champlain, on the 15th of June, 1848, consigned to the plaintiffs; and it appeared that said wool was attached while it was on board of said boat on Lake Champlain, and brought back to the defendants' store-house, where it remained till it was sold on their execution against B. & H. Boynton; and that the remaining bales had never left the defendants' store-house, and were attached while there. The testimony of Phillip I. Aubin, one of the plaintiffs, tended to show that the plaintiffs were commission merchants in the city of Boston; that in the fall of 1846, they entered into a contract with B. & H. Boynton, by which the said Boyntons were to forward to the plaintiffs wool, and invoices and receipts of wool, and the plaintiffs were to accept their drafts to the amount of two-thirds or three-fourths of the value of the wool sent forward; that this contract went into effect and continued up to the time of this transaction; that they opened a general account with the Boyntons, kept debt and credit, charged the drafts when accepted, and charged freight and expenses, and gave credits for sales made; that Boyntons sent their drafts, all along during said time, and they accepted them in reference to and in regard to what wool they had on hand and what was on the way to them; in short, in reference to the general statement of their account; that they had five per cent commission and charged interest on general average.

The plaintiffs also introduced testimony showing a demand of the property on the 30th of June, 1848, and a refusal by the defendants to give it up.

The defendants then introduced their writ of attachment, judgment and execution, and the officer's return thereon; and claimed that the plaintiffs were not entitled to recover; and, at all events, that the question should be submitted to the jury whether the drafts were accepted by the plaintiffs, specially on the wool in question, or upon general account, and that, in the latter case, the plaintiffs were not entitled to recover.

The court charged that if the jury found that it was agreed that the Boyntons were to consign the wool, and forward to the plaintiffs the shipper's receipt or bill of lading, and the plaintiffs were to

accept the drafts as stated by Aubin, and the wool was so shippped and consigned, and the bill of lading or shipper's receipt forwarded and drafts drawn and accepted upon the credit of, and with refer-ence to the wool so forwarded, that the plaintiffs would have the constructive possession of the wool on hand, and that the same was not subject to attachment as the property of B. & H. Boynton, and the plaintiffs would be entitled to recover the value of the wool un-less it exceeded the amount of the plaintiffs' lien, if so, the amount due them on the three drafts.    Exceptions by the defendants.

*D. A. Smalley* and *F. G. Hill* for the defendants.

The facts in this case did not give to the plaintiffs a constructive possession, and at most would only have that effect as between the consignor and a third party who had acquired a right from the consignee.    3 T. R. 119–123; *Kinloch* v. *Craig;* 1 Eng. Ex. R., 422, 3 Price 547, S. C., *Nichols* v. *Clent;* 39 Common Law 260, *Mitchell* v. *Ede;* 5 Maule & Selwin 350, *Patten* v. *Thompson;* 3 Mees. & Wels. 15, *Bruce* v. *Wait;* 2 Washington, C. C. R. 283; *Walter* v. *Ross;* 23 Vt. 217, *Elliott & Boynton* v. *J. Bradley & Co.;* 1 Smith's Leading Cases 760.

The defendants' receipts, forwarded by the Boyntons, made no change in the title or possession of the wool, and cannot be treated as bills of lading which carry title by delivery and endorsement, and the plaintiffs had no legal right to rely upon them as such. 11 Eng. C. L. 309, *Akerman* v. *Humphrey;* 49 Eng. C. L. 699–700, S. C. cited and approved by Tindall, C. J.

*G. F. Edmunds* and *L. E. Chittenden* for the plaintiffs, cited *Davis & Aubin* v. *Bradley & Co.*, 24 Vt. 55; *Bryans* v. *Nix*, 4 Mees. & Wels. 774; *Haille* v. *Smith*, 1 B. & P. 563; *Holbrook* v *Wight*, 24 Wend. 335; *The St. Jose Indians*, 1 Wheaton; *Gardner* v. *Howland*, 2 Pick. 599.

The opinion of the court was delivered by

Redfield, Ch. J.    The question in the present case is in regard to the right of a factor to a lien upon goods consigned to him and upon which he has made advances.    Ashurst, J., in giving the opinion of the court in *Lickbarrow* v. *Mason*, 1 H. B. 357; 2 T. R. 63; 6 East 21, a very leading case upon this sub-

ject, says in regard to a bill of lading, "If the consignor had intended to restrain the negotiability of it, he should have confined the delivery of the goods to the vendor only, but he has made it an endorsable instrument." The judge seems to consider the fact, that the bill is made to deliver to assigns, essential to its validity, in the hands of a *bona fide* purchaser of the goods; 3 B. & Al. 282; 1 Ld. Raym. 271. And in Chitty on Contracts it is said, p. 485, "if the bill of lading be to deliver to A, he should be plaintiff. The bill of lading will decide who shall sue the carrier," citing *Bryans* v. *Nix*, 4 M. & W. 775. The form of expression used by Mr. Chitty as indicating who is to bring the suit, upon the face of the contract of consignment, or receipt by the carrier, is the very identical language of two of these receipts. "June 13, 1848. Received of B. & H. Boynton, twenty-two bales of wool, *to be forwarded to Davis & Aubin.*" The one of May 30, is "*to forward to Davis & Aubin,*" and that of the 15th June, is, "Received in store, &c., of B. & H. B., *for Davis & Aubin,*" which is still more explicit, if possible. In the case of *Bryans* v. *Nix*, the paper called indifferently a shipping receipt, and a bill of lading, was not made to assigns, but only to the plaintiffs, and the effective part of the contract was to be delivered to Delany & Co. at Dublin, in care for and to be shipped to the plaintiffs in the action, which is certainly no more express in its undertaking to forward the goods to the plaintiffs, than the contract of the defendants in the present case. In either case it is an express promise to deliver to the consignees. It can, by no kind of refinement, be made to signify anything else. And according to all the cases, if the plaintiffs had been purchasers, this would have vested the absolute title in them, subject only to the right to stop *in transitu,* which right might have been defeated by a *bona fide* transfer of the bill of lading for value. In *Hall* v. *Griffin*, 10 Bing. 246, it was held, that the transfer of a wharfingers's receipt was a transfer of the property. And TINDALL, CH. J., said, "it had been the practice to consider money advanced, upon a wharfinger's receipt, in the same light as if advanced on the actual delivery of goods." And the holder of a lighterman's receipt is said to have a control over the goods till he can obtain a bill of lading; *Craven* v. *Ryder*, 6 Taunton, 433.

Davis & Aubin v. Bradley & Co.

As contended by counsel in the case of *Bryans* v. *Nix*, the contract was destitute of almost all the essentials of a bill of lading. It was no voyage at all, but a mere transfer along a canal boat to Dublin, and from thence to Liverpool. But the court held that the consignees acquired a sufficient title to all the cargo which was actually put on board the boat by the consignors, before the shipping receipt was executed, and forwarded to the plaintiffs, but not to such as was then under their control and not shipped, so that the mere promise to ship certain articles set apart, would not be sufficient, but it must actually be done, and the shipper's receipts, according to most of the cases, forwarded and the bill accepted, or advances made upon the faith of such shipment, before any new destination is given to the cargo. Until that is done the matter is ambulatory, and dependent upon the will of the consignor. But afterwards, it is beyond recall. In that case the consignor altered his mind before the second boat was loaded and gave an order to the shipper to have its cargo delivered to another person, as also the first. And the court held that the first was beyond his control, and not the second because the order was countermanded before it was shipped.

It seems impossible to distinguish the present case, in principle, from the case of *Bryans* v. *Nix*. There are many cases where a symbolical delivery of goods with an advance, or acceptence upon the faith of the delivery of such symbol, has been held to create a lien upon the goods, the same as the actual delivery. In *Hall* v. *Griffin*, 10 Bing. 246, before referred to, one Willson was the owner of goods, which were about to be shipped from Stockton to London and took a wharfinger's receipt for them, which he handed over to the plaintiff upon an advance of money. The plaintiff showed this wharfinger's receipt to the wharfinger at London before the goods arrived, and he promised when they did arrive to deliver them to the plaintiff. And the court held, that the plaintiff acquired such an interest in the goods as would enable him to maintain trover. This is put, by the court, upon the ground, that it was a symbolical delivery of the goods, the same, says BOSANQUET, J., as if the goods passed from hand to hand.

In the case of *Craven* v. *Ryder*, 6 Taunton 438, the plaintiffs contracted to sell sugars to one French, and put them on board the

ship for that purpose, but took a lighterman's receipt for them as shipped "for and on account of the plaintiffs," and although the master gave a bill of lading, certifying that the goods were shipped for French, or his assigns, it was held, that he did this in his own wrong until the lighterman's receipt was surrendered. That was the contract of consignment, until exchanged for the bill of lading.

So that, to give a factor a lien upon goods consigned, but not actually received, these incidents must concur. 1. The consignment must be, in terms, to the factor. That was so in the present case, as much as if a formal bill of lading had been made in his name, omitting assigns. So that the undertaking of Bradley & Co. is, in terms, to forward them to Davis & Aubin, and for their benefit. They are upon the face of the forwarder's receipt, (which is in fact a bill of lading, as far as one can properly exist in these inland transactions,) the party entitled to sue, and the instrument binds the defendants to forward the goods to the plaintiffs, and equally binds the carrier, to deliver to them, and, *prima facie*, the plaintiffs are the only party entitled to receive the goods, upon the face of the transaction. B. & H. Boynton had parted with their control over them. 2. But to the conclusiveness of such a contract against creditors and subsequent purchasers, it is requisite that the consignee should have made advances or acceptances, upon the faith of these particular consignments. That, too, we think is shown by the testimony, and found by the jury.

In addition to this, which seems commonly sufficient to give the factor a lien, and is all that existed in *Holbrook* v. *Wight*, 24 Wendell, 169, and which seems to us to be a sensible, and we see no reason to doubt, a sound case, in addition to all this, the present case does contain what all the cases and all the books upon this subject, as far as I can learn, have ever regarded as a symbolical delivery of the goods, the sending to plaintiffs the shipper's receipt, which is, in effect and in terms, a consignment, or bill of lading to the plaintiffs. For what is a bill of lading? It seems to be nothing more than an acknowledgment that the goods are put on board the ship, at one port, to be delivered to A. B. at another port, or to his assigns. This contract is commonly executed in triplicates, one of which is kept by the master for his own information, as to the nature of his undertaking, one is retained by the consignor, to show

that he has shipped the goods, the other, which is the only one intended to be negotiated, is forwarded to the vendee or factor, and if these persons endorse such bill of lading, for value, it passes the title of the goods even to the defeating of the right to stop *in transitu.* The consignor may, if he choose, take the bill of lading in his own name, and then he can endorse it. But, unless he restricts the consignment to be delivered for his own use, the consignee is the party *prima facie* entitled to control the delivery, and the title. And this is the form of the present consignment. And the shipper's receipt, being delivered to plaintiffs, and acceptances made upon its faith, the plaintiffs' title was perfected to the extent of their lien, and this point is expressly put to the jury and found.

This point was considered and decided by the court when the case was last before us, and is reported in 24 Vt. 55, and the reargument and re-examination has confirmed our convictions of the entire soundness of the decision. We do not think the question is one susceptible of reasonable doubt, and it seems to us to have been properly submitted to the jury, so that we might here content ourselves by affirming the judgment; but we are induced to examine the cases further to some extent.

The case of *Holbrook* v. *Wight,* 24 Wendell 168, is a full authority for the decision of the county court in this case. There the plaintiffs were commission merchants in New York, and their correspondents manufacturers at Middlebury, Vermont. They advised the plaintiffs of the goods being in readiness to be forwarded to them, and that they would be sent to a house in Troy, as soon as consistently could be, to be forwarded to the plaintiffs in the spring. That was done, and the goods sent to a forwarding house in Troy, with instructions to forward them to the plaintiffs upon the opening of navigation. The consignors, about this time, drew upon the plaintiffs for $6,000, at different dates, which the jury found, as they did in the present case, the plaintiffs accepted relying upon these consignments. The consignors, being pressed by other creditors, made a different disposition of the goods, while remaining in the hands of the forwarder, at Troy, and ordered them into other hands, and to be delivered to other parties. But the court held that the lien of the first consignees was perfected, and the subsequent disposition of the property could not defeat their rights. In

this case there was nothing like a symbolical delivery which does exist in most of the English cases upon this point, and equally in the present case, and which seems to be regarded, by most jurists and merchants, as an essential element in a consignment to a factor, in order to perfect his lien for advances made upon the faith of such consignment, and which fact is regarded as amounting, in all cases, to a substantial change both of title and possession. The case of *Taylor* v. *Kymer*, 3 B. & Ad. 320, is a very elaborate and well considered case, where this distinction is fully recognized. It may be here noticed that some of the English cases treat a formal bill of lading as strictly negotiable, notwithstanding the omission of the word assigns; *Renteria* v. *Reuding*, 1 M. & M. 511. But no question of that kind arises in the present case; see 1 Smith's Leading Cases, 260, note to *Miller* v. *Race*, where the proposition is attempted to be maintained that no instrument, by the English common law, is strictly negotiable, unless in terms made to assigns, or order, or bearer, &c., that is, unless its negotiable quality appears, in terms, upon the face of the instrument. None of the principles laid down in the case of *The Frances*, 8 Cranch, 335 *et seq.*, have much application to this subject, as the questions there discussed have reference to prize cases, nor does any general principle there laid down conflict at all with our decision here. *Mitchell* v. *Ede*, 39 Eng. Com. Law, 260, 11 Ad. & Ellis, 888, is decided chiefly upon the question of the intention to consign the particular goods, and the effect of endorsing a bill of lading, as passing the absolute title, and so far as the symbolical delivery is concerned, is an authority for our present decision. In the case of *Elliott & Boynton* v. *the defendants*, 23 Vt. 217, there was no advance or acceptance upon the faith of any particular consignment, and nothing like a symbolical delivery, which leaves the case wholly dissimilar to the present. No shipping list or receipt was ever delivered to the plaintiffs in that case, by any one. The case of *Whitehead* v. *Anderson*, 9 M. & W. 534, where it is held that, to constitute a constructive possession in the consignee, the forwarder or carrier must enter into some new and specific contract to deliver to the consignee, is this very case, as we understand the shipper's undertaking. The case of *Gardner* v. *Howland*, 2 Pick. 599, seems to us a full authority for the decision we here make. Here,

the delivery of the invoice, with an assignment, is regarded as a symbolical delivery of the ship. Without speaking in detail of the other cases, which seem to us more remote from the very points involved in this case, we conclude by saying that no case, and, so far as we can perceive, no principle conflicts with the plaintiff's right to recover.

It is scarcely needful to advert to any criticisms which were attempted at the bar, upon the opinion of the court in the 24th of Vt. in the same case. We have shown that the decision is sound and tenable, we think; and, if it were not, it must, according to the settled practice of this court, govern the same case; but we do not consider that the opinion of the court, as there reported, is fairly open to the objection that it is extra-judicial, and mere *obiter dictum*, because the judge does not confine his argument to the single point urged by counsel. That might have been sufficient, but it was by no means so entirely free from all cavil, as the reason urged by the learned judge, which, so far from being his own individual speculation, was the very ground, and the chief ground upon which the case was rested by the different members of the court at the consultation, and is too well and too convincingly stated, to require any attempt at support or commendation from me.

Judgment affirmed.