HODGES & CO. v. KIMBALL & FARNSWORTH.

1. **Pleading**: AMENDMENT. When an action is brought upon a cause of action belonging to a copartnership, in the name of one of the partners only, the court may, at any time, permit an amendment substituting the name of the firm as plaintiff.

2. **Lien**: VENDOR AND VENDEE. The fact that a party furnished the money with which grain was purchased would give him no specific lien thereon.

3. ——— : ——— : PRIORITY. Where grain was consigned to a commission merchant, under an agreement that he should sell it and apply the proceeds to repay advances previously made to the consignor, it was *held* that he must have the actual or constructive possession of the grain to entitle him to a lien, as against the creditors of the consignor, and that the placing of the grain on board the cars, consigned to the commission merchant, would not give him priority over a creditor levying an attachment before the shipping receipts were forwarded.

*Appeal from Howard District Court.*

WEDNESDAY, DECEMBER 4.

ON the 24th day of May, 1876, Lyman F. Hodges filed his petition in replevin for eighteen hundred bushels of wheat,

claiming that he had a lien thereon for the sum of two thousand dollars. On the 31st day of October, 1876, the cause was, by consent of parties, duly referred by order of the court to J. O. Crosby, Esq., as referee, to hear and try all the issues of law and fact, and report therein to the court. On December 27th the cause came on to be heard before the referee, and the said Lyman F. Hodges thereupon asked leave to file an amendment to his petition making James H. Smith a party plaintiff therein, so that the plaintiffs in said cause will be Lyman F. Hodges and James H. Smith, copartners, doing business under the firm name and style of Lyman F. Hodges & Co. The defendants objected to leave being given to file this amendment for the following reasons: *First*, that the same would be substituting another and distinct party plaintiff in the suit; *second*, said partners cannot sue in their individual names. The referee overruled this objection, and defendants excepted. The following amendment was then filed:

"That Lyman F. Hodges and James H. Smith are copartners in business under the firm name and style of Lyman F. Hodges & Co., and whenever the name of Lyman F. Hodges occurs in said petition it is changed so as to read Lyman F. Hodges and James H. Smith, copartners under the firm name and style of Lyman F. Hodges & Co., and whenever the pronoun 'he' is used, relating to said Hodges, it is so changed as to read 'they,' relating to said firm, and the word plaintiff is changed to plaintiffs."

The cause was tried by the referee, who reported to the court the following finding:

"1. That in the spring of 1875 the plaintiffs and W. H. Valleau, at Milwaukee, in the State of Wisconsin, entered into a contract whereby the plaintiffs were to advance money to said Valleau on his drafts, drawn on them to purchase wheat and other produce to be shipped by him consigned to them at Milwaukee, to be by them sold on the usual commissions, and out of the net proceeds thereof to reimburse

themselves for the advances so made; that said Valleau was to forward the railway shipping receipts to plaintiffs as soon as consignments were made.

"2. I find that pursuant to said agreement the plaintiff had advanced to said Valleau, up to the 10th day of May, 1876, eighteen thousand one hundred and seventy-three dollars and thirteen cents, in excess of all net proceeds of sales received by them.

"3. That in pursuance of said agreement all the wheat and other produce shipped by said Valleau from Cresco to Milwaukee (and nearly all that was shipped by him) was, after the making of said agreement, in accordance therewith, consigned to the plaintiffs; and in pursuance thereof, on the forenoon of the 10th day of May, 1876, five car loads of wheat, of the value of one thousand three hundred and fifty dollars in bulk, on board of cars Nos. 3550, 4178, 3612, 4582 and 4732, were by Valleau's agent at Cresco delivered to the Chicago, Milwaukee & St. Paul Railway Company for shipment to Milwaukee, and their receipts given therefor, consigned to the plaintiffs, which receipts are attached to deposition of L. F. Hodges as exhibits 'A,' 'B,' 'C,' 'D' and 'E.'

"4. That after the delivery of said five car loads of wheat and the taking of the receipts therefor, and between one and two o'clock P. M. of the same day, the said wheat was attached by the sheriff of Howard county, at Cresco, as the property of W. H. Valleau, at the suit of the defendants Kimball & Farnsworth against him, and was afterwards retaken upon the writ of replevin in this action.

"5. The said Valleau kept an office at Decorah, and the usual course of his agent in charge at Cresco was to forward all shipping receipts to Valleau at Decorah, and they were forwarded from there to the plaintiffs. After this wheat was attached, Valleau's agent retained the receipts, and did not forward them to Decorah until three days after, when he was directed to do so by Valleau. On Monday, the 15th of May,

they were forwarded to plaintiffs by mail, with the following letter:

'DECORAH, May 13, 1876.

'L. F. HODGES & Co.: Enclosed find receipts for the five cars attached at Cresco.          W. H. VALLEAU, JR.'
—"And by due course of mail reached plaintiffs on the evening of May 15.

"And as conclusion of law I find the plaintiffs entitled to the possession of the wheat by them replevied in this action, with the right to sell the same, and reimburse themselves from the proceeds for advances made to said Valleau, and recommend that judgment be entered accordingly."

Upon the trial before the referee the defendants offered to prove that no part of the wheat in question was bought by Valleau with any money received by him from plaintiffs, and that the same was bought with money advanced by defendants to Valleau, on his drafts drawn on plaintiffs, which plaintiffs refused to pay. Plaintiffs objected to this offered testimony as irrelevant and immaterial, and stated that they will not claim that the grain in question was bought with any money furnished by them. Thereupon the referee sustained the objection, and defendants excepted.

The defendants duly excepted to the report of the referee for the following reasons:

"1. That said report is contrary to law.

"2. Said report is contrary to the evidence.

"3. Said referee did not find and report all the facts.

"4. Said referee should have found as a fact, from the evidence, that Valleau retained control of all produce shipped by him to the plaintiffs, after the same was delivered to the carrier and consigned to plaintiffs, and receipts taken therefor, until the same was sold by plaintiffs; and that said Valleau directed plaintiffs how and when to sell the produce shipped them by him, and in what market to sell it, and that plaintiffs generally followed such directions.

"5. Said referee should have found as a fact that the wheat

in question was not purchased by Valleau with any money advanced him by the plaintiffs.

"6. Said referee erred in finding, as a conclusion of law, that plaintiffs had a vested interest in the wheat, and were entitled to the possession of the same.

"7. Said referee should have found, as a conclusion of law, that defendants were entitled to the possession of the wheat in suit."

On the first day of the April Term of said court the defendants filed their motion to set aside the report of the referee, as follows:

"1. The said referee erred in permitting L. F. Hodges & Co. to be substituted as parties plaintiffs herein, in lieu of the original plaintiff.

"2. The said referee erred in permitting said Lyman F. Hodges to file said amendment to his petition.

"3. The said referee erred in sustaining plaintiffs' objections to offer of defendants to prove that the wheat in question was not bought with money furnished by plaintiffs, and was bought with money furnished by the defendants on drafts of Valleau on plaintiffs, which plaintiffs refused to pay.

"4. That said report is contrary to law.

"5. That said report is contrary to evidence."

The court overruled the exceptions and motion, and rendered judgment in favor of plaintiffs in accordance with the referee's report. The defendants appeal.

*H. T. Reed*, for appellants.

*Thomas Updegraff*, for appellees.

DAY, CH. J.—I. Appellant assigns as error the action of the referee in permitting the amendment to the petition. The

1. PLEADING: amendment. Code, § 2689, provides: "The court may, on motion of either party, at any time, in furtherance of justice, and on such terms as may be proper, permit such party to amend any pleadings or proceedings by adding

or striking out the name of a party, or by correcting a mistake in the name of a party, or a mistake in any other respect." * * * * It would seem that this provision is broad enough to authorize the amendment in question. Such an amendment as this was held proper in *Dixon v. Dixon*, 19 Iowa, 512.

II. It is urged in effect that the first finding of facts does not with sufficient fullness set out the agreement between Valleau and the plaintiffs, and that we should now, from a review of the testimony, incorporate into it other facts, or reverse and remand the case for further action in the court below. But neither the exceptions to the report of the referee nor the motion to set it aside suggested this objection to the court below. The exceptions suggest generally that the referee did not find all the facts, and specify two matters respecting which it is claimed the referee should have reported. But, for aught that the record discloses, this particular objection is urged for the first time in this court. It cannot, therefore, be considered.

III. The defendants offered to prove that no part of the wheat in question was bought by Valleau with money received by him from the plaintiffs. The plaintiffs objected to this offered testimony, and stated that they would not claim that the grain in question was bought with money furnished by them. In our consideration of the case, therefore, we may regard the fact as established, though not reported by the referee, that the grain in question was not bought with money furnished by the plaintiffs, and we may give to this fact such weight as it may be entitled to.

IV. It is urged that the referee erred in refusing to permit defendants to prove that the grain in question was bought 2. LIEN: ven- with funds advanced Valleau by defendants, on dor and ven- dee. Valleau's drafts drawn on plaintiffs, which drafts plaintiffs refused to pay. In this action there was no error. The mere fact that defendants furnished Valleau money, and that with it he bought the grain in question, would give them

no specific lien upon the grain.  Their lien dated from the levying of the attachment.

V.  The case must be determined upon the facts reported by the referee, with the additional fact that the grain was not bought with money furnished by the plaintiffs.

3. ——: ——:
priority.

From the facts reported it appears that the grain in question was shipped on the 10th day of May, 1876, from Cresco.  On the same day the grain was attached at Cresco, at the suit of the defendants, as the property of W. H. Valleau.  The shipping receipts were not forwarded to the plaintiffs until the 13th day of May, and did not reach them until the 15th.  The advancements on account of which the plaintiffs claim their lien were all made before this grain was shipped.  The facts of this case bring it upon all fours with *Elliott & Boynton v. Bradley*, 23 Vt., 217, in which it was held that when goods are consigned to a factor, under an agreement that he shall sell them and apply the proceeds to repay advances previously made by him to the consignor, he must, in order to acquire a valid lien upon the goods, as against the creditors of the consignor, have the actual or constructive possession of the goods.

In this case an agreement was made between a manufacturer of cloth in the State of Vermont and the plaintiffs, who were commission merchants in New York, by which the manufacturer was to send his cloth to the plaintiffs for sale on commission, and was to draw upon them in advance of the sales, and also in advance of sending the cloth, if necessary, upon sending the invoices of the cloth forwarded or to be forwarded, and the plaintiffs were to apply the avails of the sales to repay their advances.  Under this arrangement the consignor forwarded to the plaintiffs, from time to time, invoices of the cloth sent, and to be sent, and the cloth was then sent to forwarding merchants at Burlington, and was by them sent to the plaintiffs as soon as convenient.  The drafts were drawn and the acceptances charged, and sales credited upon general account.  No bill of lading was sent to the plaintiffs,

but shipping bills were sent by the forwarding merchants to their agents in New York, describing the consignor, the consignees, and the marks upon the goods, in order to guide the agents in delivering the goods to the consignees. It was held that the goods, after being sent to the forwarding merchants, and while upon the transit between Burlington and New York, remained at the risk and subject to the control of the consignors, and liable to attachment by their creditors. In fact, this case is a stronger one in favor of the consignees than the one at bar, for the cloth was in transit, and the shipping lists had been sent to the agents of the forwarding merchants, while in the case at bar the wheat had not moved from the place where it was shipped, and the shipping receipts still remained in the hands of the consignor. Appellee claims, however, that this case is overruled by the subsequent case of *Davis v. Bradley & Co.*, 28 Vt., 118. It is so stated· in Bigelow's Overruled Cases, page 168.

The court, announcing the latter opinion, do not attempt to disturb the authority of the former, but distinguish the latter case therefrom. The court, through REDFIELD, Ch. J., say: "In the case of *Elliott & Boynton v. Bradley*, 23 Vt., 217, there was no advance or acceptance upon the faith of any particular consignment, and nothing like a symbolical delivery, which leaves the case wholly distinguishable from the present. No shipping list or receipt was ever delivered to the plaintiffs in that case, by any one." In this latter case (28 Vt., 118) B. & H. Boynton delivered to the defendants, who were storage and commission merchants, several sacks of wool, for which the defendants gave receipts, specifying that they were for the plaintiffs, or to be forwarded to the plaintiffs. These receipts were sent to the plaintiffs, and they, upon the credit of and with reference to said wool, accepted drafts drawn upon them by B. & H. Boynton. It was held that the plaintiffs thereby obtained the constructive possession of the wool, and had a lien upon it for the amount of their acceptances. It was further held in this case that to give a factor a lien

upon goods consigned to, but not actually received by, him, the consignment must be to him in terms, and he must have made advances or acceptances upon the faith of the particular consignment. The distinction between *Davis v. Bradley & Co.*, 28 Vt., 118, and *Elliott & Boynton v. Bradley*, 23 Vt., 217, is apparent at a glance. In the former case the plaintiffs had received the shipping receipts, and made advances upon the faith of the particular consignment. In the latter case neither of these facts existed. The same distinction exists between *Davis v. Bradley & Co.* and the case at bar.

In *Bank of Rochester v. Jones*, 4 Coms., 497, it was held that where property is delivered to a forwarder or carrier, upon consignment to a factor for sale, but the receipt or bill of lading is not delivered or sent by the owner to the factor, and the property has not reached him, the factor acquires by the transaction no general or special property in the goods, notwithstanding the consignor may be indebted to the factor for advancements upon previous consignments to an amount greater than the value of the goods. See, also, *Winter v. Coit*, 3 Seld., 288; *Kimloch v. Craig*, 3 Term Rep., 119.

The appellees rely principally upon *Holbrook v. Wight*, 24 Wend., 169; *Grosvenor v. Phillips*, 2 Hill, 147; *Bailey et al. v. The Hudson River R. Co.*, 49 N. Y., 70; *Haille v. Smith*, 1 Bos. & Pul., 563; and *Knulder v. Ellison*, 47 N. Y., 36.

In *Holbrook v. Wight*, a consignment of goods was made, the consignor sending a letter of advice to the consignee, and immediately thereafter drawing upon the consignee for funds, who accepted the draft. From the circumstances it may well have been found that the acceptance was made upon the faith of the particular consignment. This would bring the case within the principle of *Davies v. Bradley & Co.*, 28 Vt., 118.

In *Grosvenor v. Phillips* the consignor made a special agreement that the goods in question should be sent to plaintiffs for sale as a satisfaction for advances which plaintiff had made for him, and he placed them with a railroad agent for that purpose, transmitting an invoice and declaring his pur-

pose by mail.   These were controlling facts in the decision, the court holding that the transmission of the invoice and the declaration of the consignor's purpose were equivalent to the forwarding of a bill of lading.

In *Bailey v. The Hudson River R. Co.*, 49 N. Y., 70, the facts were as follows :  On the 13th of October, 1866, plaintiffs received in New York from Alden, Frink & Western, of Cohoes, an invoice of three cases of goods, consigned to plaintiffs on account of consignors by the defendant's road.   Plaintiffs advanced thereon three-fourths of their value, and at the same time loaned Alden, Frink & Western three thousand nine hundred and seventy-four dollars and thirteen cents, for which that firm gave their check, payable a few days ahead. The check not being paid, it was agreed that Alden, Frink & Western should ship to plaintiffs, to pay the debt, eight more cases of goods.   Invoices were sent to plaintiffs, stating the goods were consigned to plaintiffs on account of the consignees. On the 16th and 17th of October all the eleven cases were consigned to plaintiffs, and delivered to defendant's agent at Troy, to be by defendant transported to plaintiffs at New York.   Instead of delivering the goods to plaintiffs, defendant, without requiring the surrender of its receipts, allowed Mr. Frink, unbeknown to his firm, to change their destination, and, in pursuance of his order, the goods were delivered to Albert Jewett & Co., of New York city, by whom they were sold, and the proceeds paid over to Frink.   The firm of Alden, Frink & Western were at this time insolvent.   Plaintiff demanded the goods of defendant's agent in New York.   The court ordered a verdict for the plaintiff for the value of the goods.   On appeal this judgment was affirmed.   In this case the controlling facts are that the plaintiffs had, upon the faith of the first three cases, advanced three-fourths of their value, and Alden, Frink & Western forwarded the other eight cases under a special agreement to pay a loan made by plaintiffs, and also sent forward invoices of the eleven cases.

In the case at bar there was no special agreement respect-

ing the wheat in question, nor was any shipping receipt sent to the consignee until after the attachment was levied. In *Haille v. Smith*, 1 Bos. & Pul., 563, an invoice of a cargo of goods, accompanied by a bill of lading indorsed in blank, was remitted to the consignee, but the cargo was prevented from leaving Liverpool by an embargo. It was held that the indorsement of the bill of lading operated as a transfer of the property to the consignee. The case of *Knulder v. Ellison*, 47 N. Y., 36, simply holds that, upon a sale of goods and delivery to a common carrier, the title passes to the consignees, and that the consignor cannot maintain an action against the carrier for the loss. None of the cases, as we understand them, support the proposition that appellees, under the facts found by the referee, acquired a lien upon the property in question. The court should have set aside the legal conclusion in the referee's report, and rendered judgment for the defendant.

REVERSED.

### ON REHEARING.

DAY, J.—Within the time authorized, upon the petition of plaintiffs, a rehearing was granted in this case. The defendants answered the argument of plaintiffs, and the plaintiffs, by John W. & M. B. Cary (counsel not before appearing in the case), filed a reply. The cause is now again submitted for final determination. In the petition for rehearing, and the reply to defendants' argument, counsel cite the following authorities not referred to in the original argument: *Anderson v. Clark*, 2 Bingham, 20; *Cuming v. Brown*, 9 East., 506; *Virtue v. Jewell*, 4 Campbell, 31; *Patten v. Thompson*, 5 Maule & Selwyn, 350; *Wade & Co. v. Hamilton*, 3 Georgia, 450; *Grove v. Brien*, 8 Howard, 429; *Bryan v. Nix*, 4 Mees. & W., 774; *Evans v. Nichol*, 3 Man. & G., 614; *Alderson v. Temple*, 4 Bun., 2235; *Berly v. Taylor*, 5 Hill, 577.

We have examined all of these authorities with care. The most of them are cases where a bill of lading or receipt, or letter of information, was forwarded to the consignee, or

advancements were made upon the faith of the particular consignment, and they fall within the principle of the cases reviewed in the foregoing opinion. If it should even be conceded that some of them would support a conclusion different from that reached in the foregoing opinion, still, it cannot be denied that other cases, more directly in point, equally well considered, and of equal authority, support the doctrine of the opinion.

It is not denied that the case of *Elliott v. Bradley*, 23 Vt., 217, decided in 1851, directly supports our opinion in this case; but the authority of that case is assailed. It is stated that it was overruled in *Davis v. Bradley & Co.*, 28 Vt., 118, and that "courts and text-writers have shunned it with contempt" ever since it was announced, some twenty-seven years. This statement, so far as we are able to discover, is altogether without support. The case of *Elliott v. Bradley* is not only not overruled in *Davis v. Bradley & Co.*, 28 Vt., 118, but its correctness is there, at least impliedly, recognized. In the sixth edition of Parsons on Contracts, edited in 1873, the case is referred to in support of the doctrine of the text, without any note of disapprobation. See page 98. In addition to the authorities alluded to in the foregoing opinion, the case of *Bonner v. Marsh*, 10 Smedes & Marshall, strongly supports the view therein announced. See, also, *Bank of Rochester v. Jones*, 4 Coms., 497. We are fully content with the doctrine announced, and the conclusion reached in our former opinion. The opinion before announced is adhered to.