## HUBBARD JOSLYN *v.* GRAND TRUNK RAILWAY COMPANY.

*Bailment.    Conversion.    Estoppel.*

P., who was engaged in the manufacture of starch, therein using large quantities of corn to feed his teams, in barter for potatoes, &c., ordered a quantity of corn from N. & Co., of Chicago, which they forwarded by defendant's railway on a bill of lading in which they were themselves named as consignees, and by which the defendant was directed to notify P. on arrival of the corn at its destination. Shortly after shipping the corn, they drew on P. at sight for the amount thereof in favor of a Chicago bank, the draft, with the bill of lading indorsed in blank by N. & Co., and attached thereto, being sent on for collection. When the draft was presented for payment, P. was absent, and, after the draft had been protested for non-payment, P's managing clerk asked plaintiff, who was furnishing P. money for carrying on the manufacture of starch, and was spending part of his time at P's, to pay the draft, and hold the bill of lading as security, saying that P. would pay him before taking the corn from the car. Plaintiff thereupon paid the draft, knowing that it had been protested, and took the bill of lading, intending to hold the corn until the draft was paid. Soon after the arrival of the corn, it was delivered by defendant's servants to the servants of P., and by them taken from the cars and put into a store-house at the railroad station, whence it was soon hauled to P's place of business, and used by P. in his business, as above indicated. Within a few days after the payment of the draft, and while the corn was being hauled to P's, plaintiff was at P's storehouse, and knew that the corn was being hauled there. He also had full knowledge of the way in which P. was disposing of the corn, but made no objection either to P. or to his servants as to either the removal or the disposal of it, and gave defendant no notice that he claimed it until it was nearly or quite all disposed of and P. had become insolvent. *Held,* that under the circumstances of the case, *q. v.,* the delivery of the corn was not a delivery to plaintiff ; that by purchasing the draft plaintiff became vested with title to the corn ; that the delivery to P. was therefore wrongful ; and that as plaintiff neither did nor omitted to do anything that led defendant to so deliver, he was not estopped from taking advantage of such delivery.

TROVER with counts in case for two car-loads of corn. Plea, the general issue. The case was referred. The facts reported were in substance as follows :

At some time in the summer or fall of 1874, the plaintiff entered into an arrangement with one J. C. Page, of Charleston, who was engaged in the manufacture of starch, whereby the plaintiff was to furnish Page money to buy potatoes, and take the starch from the factory as fast as it was manufactured, for his security. The plaintiff entered into that arrangement, and fur-

nished money in pursuance thereof, intending to realize some-thing from the proceeds of the starch to apply on a debt of about $2,000 that Page then owed him, but although a considerable quantity of starch was manufactured, and although the plaintiff spent a large part of his time at the factory in attendance upon his interests there under said arrangement, Page so managed as to secure a part of the avails of the starch and leave the plaintiff with less than enough to cover his advances, and nothing to apply on the previous indebtedness. The starch was all manufactured before the first of November, and marketed, three car-loads in November and two in January, 1875. While the manufacture of the starch was going forward, Page was using large quantities of corn to feed his teams, in barter for potatoes, and on general account; and early in September he ordered a car-load from J. B. Nutting & Co. of Chicago. On the 16th of that month Nutting & Co. forwarded the same over the defendant's railway, consigned to themselves at Island Pond, with directions to the defendant to notify Page; and, on the 25th, drew on Page at sight in favor of the Third National Bank of Chicago, for $342,23, and the draft, with bill of lading indorsed in blank by Nutting & Co., and attached thereto, was forwarded to the National Bank of Derby Line, where it was payable, for collection. On October 5, 1874, the draft was protested for non-payment, and on the 6th, Page's managing clerk, Page being away from home, requested the plaintiff to pay the draft and hold the bill of lading as security, saying that Page would pay him before taking the corn from the car. After taking counsel in the matter, the plaintiff bought the draft, knowing that it had been protested, and took the bill of lading, intending to hold the corn until the draft was paid. Not long afterwards Page ordered another car-load from the same firm, which they forwarded, consigned to themselves, on November 5th, drawing on Page at sight in like manner for $320.66, the draft being sent with bill of lading attached, as before, for collection. When the draft was presented Page was again absent, and the plaintiff was requested to pay the draft and take the bill of lading as security, which he did, intending to hold this corn also until the draft was paid. Shortly after the arrival of each of

those two car-loads at Island Pond, the corn was delivered by the defendant to Page's teamsters, who signed the receipts in the defendant's delivery book, and took the corn from the cars to a store-house, whence it was in a few days hauled to Page's store-house at Charleston, where it was soon used in the manner already indicated. The plaintiff was at Page's store-house within a few days after the payment of each draft and when the corn was being hauled, and had full knowledge of the way in which Page was using and disposing of the corn, but made no objection to Page or his servants as to either the removal or the disposal of the corn, and never gave the defendant notice that he claimed to hold the corn, except as hereinafter stated. On December 24th, the corn being then nearly all disposed of, Page filed his petition in bankruptcy. The plaintiff thereupon sent a message by one Hinman, directing the defendant not to deliver the corn without his order. No other notice was given until June 17, 1875, when the plaintiff's attorney wrote the defendant requesting delivery of the corn or payment of the drafts.

The referee found that if the plaintiff was entitled to recover for both car-loads, he should recover the amount of both drafts with interest, but if for only one, then the amount of the draft therefor with interest ; but that if he was not entitled to recover, the defendant should recover its costs.

At the February Term, 1878, the court, REDFIELD, J., presiding, rendered judgment on the report, *pro forma*, for the plaintiff ; to which the defendant excepted.

*G. N. Dale* and *Ray, Drew & Jordan*, for the defendant.

The corn was virtually delivered to the plaintiff. The plaintiff did not so purchase the drafts as to become the owner of the corn. It is as if he took them up at Page's request. The case is distinguishable from *Tilden* v. *Minor*, 45 Vt. 196, in that here the drafts had been protested.

But, at any rate, the plaintiff is estopped from claiming the corn. *Hogan* v. *Brooklyn*, 52 N. Y. 282 ; *Nixon* v. *Brown*, 57 N. H. 39 ; *Swain* v. *Seamans*, 9 Wal. 254 ; *Stafford* v. *Ballou*, 17 Vt. 329 ; *Strong* v. *Ellsworth*, 26 Vt. 366 ; *Cady* v. *Owen*, 34

Vt. 598 ; *Markham* v. *O' Connor*, 52 Ga. 183 ; *Chapman* v. *Chapman*, 59 Pa. St. 214 ; *Vt. Copper Mining Co.* v. *Ormsby*, 47 Vt. 709 ; *Manuf'rs Bank* v. *Hazard*, 30 N. Y. 229 ; *Halloran* v. *Whitcomb*, 43 Vt. 306.

·*John Young*, for the plaintiff.

The plaintiff having become the owner of the drafts and holder of the bills of lading as security, was vested with title to the corn. *Lickbarrow* v. *Mason*, 2 East, 21 (1 Sm. Lead. Cas. 1048) ; *Gardner* v. *Howland*, 2 Pick. 599 ; *Davis* v. *Bradley*, 24 Vt. 55 ; s. c. 28 Vt. 115 ; *Tilden* v. *Minor*, 45 Vt. 196.

The delivery to Page was wrongful, and was a conversion. 2 Kent Com. 604 ; 2 Redf. Railw. 61–64 ; Story Bailm. 450, 543–570 ; *Garnett* v. *Willan*, 5 B. & Ald. 53 ; *Duff* v. *Dodd*, 3 Brod. & B. 177 ; *Stephenson* v. *Hart*, 4 Bing. 476 ; *Merwin* v. *Butler*, 17 Conn. 138 ; *Wyld* v. *Pickford*, 8 M. & W. 461 ; *Winslow* v. *Vt. & Mass. R. Co.* 42 Vt. 700 ; *Blumenthal* v. *Brainerd*, 38 Vt. 402, 414.

The plaintiff did nothing to mislead the defendant and is not estopped. *Strong* v. *Ellsworth*, 26 Vt. 366 ; *White* v. *Langdon*, 30 Vt. 599 ; *Wooley* v. *Edson*, 35 Vt. 214 ; *Robinson* v. *Hawkins*, 38 Vt. 693 ; *Vail* v. *Strong*, 10 Vt. 457 ; *Gale* v. *Lincoln*, 11 Vt. 152.

The opinion of the court was delivered by

Ross, J.   The two car-loads of corn in controversy were shipped from Chicago over the defendant's railway by J. B. Nutting & Co. to Island Pond to *their own order*, with directions to the defendant to notify J. C. Page, West Charleston.   The defendant on its delivery book treated J. C. Page as the consignee, and delivered the corn to Page's teamsters without any order from Nutting & Co.   This was a delivery to the wrong person, which rendered the defendant liable for the value of the corn to the owner thereof, unless such owner's conduct had induced the misdelivery by the defendant.   Nutting & Co., when they shipped the corn, made a draft for each car-load on J. C. Page, in favor of the Third National Bank of Chicago, payable at the Derby Line National

Bank, to which was attached a bill of lading, or shipper's receipt, of the corn indorsed by them in blank, and the Third National Bank duly forwarded the drafts with the bills of lading attached to the Derby Line National Bank for collection. Page was not at home when the corn and drafts with bills of lading reached their respective destinations. The plaintiff, at the request of Page's clerk, purchased the drafts with the bills of lading attached, intending to hold the corn for the payment of the drafts. By this purchase the title to the corn became vested in the plaintiff. *Davis* v. *Bradley*, 24 Vt. 55 ; *Davis* v. *Bradley*, 28 Vt. 118 ; *Tilden* v. *Minor*, 45 Vt. 196. Hence, the question on the report of the referee is, whether the conduct of the plaintiff induced the misdelivery, or was such that he is estopped from taking advantage of such misdelivery. We say this is the question in the case, for the facts reported do not sustain nor warrant the claim made by the defendant that a delivery to Page was a delivery to the plaintiff. By the contract of shipment the defendant was bound to deliver the corn to Nutting & Co., or some one holding their order for it. That person was the plaintiff. The defendant treated Page as the consignee and made delivery accordingly. This was negligence on the part of the defendant. *Blumenthal* v. *Brainerd*, 38 Vt. 402 ; *Winslow* v. *Vt. & Mass. R. Co.* 42 Vt. 700. Such negligence as rendered it liable to the plaintiff for the value of the corn, unless the negligence was excused by the conduct of the plaintiff. The referee has not reported an act which the plaintiff did or omitted to do which led the defendant to treat Page as the consignee of the corn, or which induced it to make the delivery to Page's teamsters. The delivery of each carload of corn was made by the defendant to Page's teamsters, and all the corn taken from the cars to Page's store-house at Island Pond several days before the plaintiff knew of any such delivery. He knew of the misdelivery of each car-load several days after it actually took place, and after the teamster had commenced drawing the corn to West Charleston, and using it up in Page's business. It would have been neighborly for him to have notified the defendant of the misdelivery as soon as he learned of it, but he was under no legal duty to give such information. It was the

defendant's duty to see to it that it delivered the corn to the owner, the plaintiff. When he knew of the misdelivery, the liability had been incurred through the negligence of the defendant's servants. Page already had the corn. The defendant could not have delivered it to the plaintiff if he had called for it. No doubt, from his relations to Page, the plaintiff was rejoiced to have Page receive the corn through the negligence of the defendant's servants, and if he had done anything to induce the misdelivery, if he had even stood silently by, and seen the misdelivery, this court would not have been slow to have given effect to such misleading acts or silence, by way of estoppel. But the fact is potent that the defendant's servants took Page for the consignee, and so the defendant was misled by its own servants. The case furnishes no facts to which the doctrine of estoppel is applicable.

*Judgment affirmed.*