# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT

L. KOMMEL & SON *v.* CHAMPLAIN TRANSPORTATION COMPANY.

February Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 19, 1918.

*Common Carrier—Carriage of Goods—Liability—Termination
—Exception to Judgment—No Evidence Supporting—Mis-
delivery of Goods—Defence—Fraud of Third Person—Rati-
fication by Consignor—Part Payment—Address of Con-
signee—Estoppel—Culpable Conduct of Consignee.*

Merely placing goods in a warehouse does not discharge a common
carrier from its liability as such, but it remains liable as an in-
surer of the goods until the consignee has had a reasonable time
in which to inspect and take them away after their arrival.

An exception to a judgment below will be sustained where there is
no evidence supporting the court's finding on which it is based.

F., a store keeper, sold his business to S., an employee, who had been
in the habit of receiving and giving receipts for goods consigned
to F., in F.'s name, at the warehouse of the defendant, who was a
common carrier. S., subsequent to the sale, ordered goods in F.'s
name of the plaintiff who shipped them to F., and defendant de-
livered them to S., who receipted for them in F.'s name. Plaintiff
and defendant were both ignorant of the sale of the business. In
an action to recover the value of goods so delivered to S., *held,*

that the plaintiff could recover the value of the goods, because, without authority of the plaintiff, the defendant was not justified in delivering the goods to any one but the consignee or to his order.

The fact that the defendant was induced through the fraud of a third party to deliver the goods to one not entitled to receive them, was no defence.

The fact that the plaintiff received part payment of the goods from S. was not a ratification of the defendant's misdelivery of the goods.

That the goods were addressed to F. at the same street and number where S. was doing business, did not justify the defendant in delivering the goods to S.

The plaintiff was not estopped from recovering from the defendant because of the culpable conduct of F.

TROVER for a quantity of goods consigned to B. J. Fayette, and delivered to M. J. Solomon by the defendant. Plea, the general issue. Trial by the city court of the city of Burlington, *C. S. Palmer*, City Judge. Judgment for the defendant. The plaintiff excepted. The opinion states the case.

*Max L. Powell* for the plaintiff.

*Rufus E. Brown* and *Theodore E. Hopkins* for the defendant.

If the goods were delivered to the one who ordered them, the carrier is not liable, although he is not the person to whom the consignor thought he was sending them. *Lakeshore & M. S. R. R. Co.* v. *Luce*, 11 Ohio C. C. 543; *Wilson* v. *Adams Express Co.*, 27 Mo. App. 360; *Dunbar* v. *Boston & P. R. Corp.*, 110 Mass. 26, 14 Am. Rep. 576.

The goods were addressed to the consignee at 77 North Street, Burlington, where Solomon was doing business. This fact justified the defendant in making delivery to Solomon, as the person in charge and control of the premises at that address, and so, one to whose care the goods were consigned. *Com.* v. *People's Express Co.*, 201 Mass. 564; *Ela* v. *Am. Merchants Union Express Co.*, 29 Wis. 611, 9 Am. Rep. 619.

MILES, J.    This is an action against the defendant for failure to deliver goods consigned by the plaintiff to B. J. Fayette.    The case was tried by the municipal court of the city of Burlington, and from the facts found by that court it appears that the plaintiff, on April 26, 1912, shipped from New York via the Hudson Navigation Company, two cases of dry goods, consigned to B. J. Fayette, 77 North Street, Burlington, Vt., which in due course of transportation were received by the defendant and transported to its dock in Burlington, for delivery to the consignee.    While doing business at 77 North Street, Fayette conducted a mercantile business, having a telephone in his store for general use, and employing several assistants in his business, among whom was M. J. Solomon, a brother-in-law of Fayette. During the time he was in trade, all freight consigned to him, coming over the defendant's transportation line, was taken from defendant's dock warehouse and hauled by Fayette's own teams, and by Fayette's direction notice was to be given to him by telephone, when freight was received at such dock warehouse, and Fayette would send his teams and remove such freight.    Fayette sometimes went after the goods himself, and at other times he would send some of his employees.    Fayette's instructions to the defendant were to deliver such freight to any one of his employees who came for it, and allow them to receipt for it.    Acting under these instructions, M. J. Solomon upon several occasions called for and receipted for goods consigned to Fayette. On August 1, 1911, Fayette sold his business on 77 North St., Burlington, Vt., to Solomon, and went into the fruit business on another street in Burlington, allowing his telephone to remain in the North Street store in his name and number, until after the delivery of the goods in controversy.

In April, 1912, the plaintiff's traveling salesman called at the North Street store, supposing that Fayette was still in business there, and took an order for the cases of goods in question from Solomon, supposing he was selling the goods to Fayette. Solomon had previously ordered goods for Fayette from the plaintiff, which had been received and paid for by Fayette.    At the time of the order, plaintiff's salesman made no inquiry as to who was purchasing the goods, and Solomon did not disclose that he was the owner of the store at that time.    The goods purchased on this order were shipped by boat from New York and consigned to Fayette at 77 North Street, Burlington, Vt.    In due

time the goods were received by defendant, and unloaded from their steamboat upon their wharf in Burlington, and defendant's freight agent at once called Fayette by telephone at 77 North Street, Burlington, and directed that he be notified of the arrival of the goods, and to send for and take them away. Solomon at once went with a team for the goods and received and receipted for them in the name of Fayette, ''by M. J. Solomon.'' Fayette had nothing to do with the store on North Street, or with its management, after he sold to Solomon, nor did Solomon continue in the service of Fayette after that date. The fact of the sale was unknown to either the plaintiff or defendant until after the delivery of the goods to Solomon.

After the delivery of the goods, the plaintiff presented to Solomon a bill for them, who paid thereon fifteen dollars in cash and a check for forty dollars, signed by Fayette, and made payable to and indorsed by himself, and no further payments have been made on the bill, and this suit is brought to recover the balance due on the bill.

The municipal court found that the defendant was in possession of the goods at the time of the delivery as warehouseman, and that as such it was in the exercise of ordinary care, prudence, and precaution when delivering the goods to Solomon. To this last finding the plaintiff excepts, on the ground that there was no evidence supporting that finding. The plaintiff also excepts to the judgment, and to the court's failure to find as requested in plaintiff's request No. 2. The court found substantially as requested in No. 2, and that exception requires no further consideration.

The plaintiff in support of his exception to the finding that the defendant was in possession of the goods as warehouseman, refers us to the transcript and the findings of the court. To determine that question it is not only necessary to look into the evidence and findings, but it is also necessary to consider, in connection therewith, when the liability of the carrier terminates and that of the warehouseman begins, for that question is a mixed question of law and fact. 4 R. C. L. 820, par. 275; *Joslyn* v. *G. T. Ry. Co.*, 51 Vt. 92.

What is the nature of a common carrier's liability, when it has transported property over its line, and deposited it in its warehouse or on its wharf or platform, to await delivery to the consignee, is a question on which three distinct views have been

taken in different jurisdictions, no one of which can be said to have been so far generally accepted as to have become the prevailing rule. One is denominated the Massachusetts rule, under which the carrier ceases to be liable as carrier as soon as the goods are placed in its warehouse, after which it is liable only as warehouseman. Another is denominated the New Hampshire rule, under which merely placing the goods in the warehouse does not discharge the carrier as such; but he remains liable until the consignee has had a reasonable time after the arrival of the goods to inspect and take them away in the common course of business. And the third is denominated the New York rule, which differs from the New Hampshire rule only in that the New York rule gives the consignee a reasonable time in which to inspect and take the goods away after notice of the arrival of the goods. 4 R. C. L. 750, par. 219.

This Court has never followed the Massachusetts rule, but has followed the New Hampshire rule in so far as to hold the carrier liable as such until the consignee has had a reasonable time in which to inspect and take away the goods after their arrival. *Blumenthal* v. *Brainerd*, 38 Vt. 402, 91 Am. Dec. 349; *Winslow et al.* v. *Vt. & Mass. R. R. Co.*, 42 Vt. 700, 1 Am. Rep. 365. The defendant has called to our attention no evidence tending to prove that the goods were held by the defendant as warehouseman, and that its liability as carrier had terminated when the delivery was made, and from an examination of the transcript, we are unable to find any evidence of that fact.

The finding of the court that the goods in question were being held by the defendant as warehouseman at the time of the delivery is without supporting evidence, and the exception of the plaintiff in that respect must be sustained, and the judgment below reversed, unless no judgment on the facts found could have been rendered against the defendant as a common carrier.

This State has never departed from the common-law rule that the common carrier stands in the relation of insurer of the property intrusted to him, and is liable for any damage to the goods while in his custody, by whatever cause, unless by act of God or the public enemy, though entirely faultless (*Blumenthal* v. *Brainerd, supra*) ; and for the delivery of goods to the wrong consignee, he is liable, unless the consignor's negligence or misconduct induced the misdelivery by the carrier. See Vermont

cases above cited; and *Joslyn* v. *G. T. Ry. Co., supra;* 4 R. C. L. 846, par. 298.

The bill of lading in this case required the goods to be delivered to the consignee, B. J. Fayette, named in the bill of lading; and though Fayette had no knowledge of that fact, nor interest in the goods shipped, that fact in no way justified the defendant in delivering them to one not entitled to receive them. Without authority of the plaintiff the defendant was not justified in delivering the goods to any one but the consignee or to his order; and it was the duty of the defendant to hold the goods until called for by the consignee or the plaintiff, and a delivery to one not entitled to receive them, though induced to make such delivery through the fraud of a third party, will not excuse the carrier. *Winslow et al.* v. *Vt. & Mass. R. R. Co., supra; Express Co.* v. *Van Meter,* 17 Fla. 783. 35 Am. Rep. 107; *Express Co.* v. *Shearer,* 160 Ill. 215, 43 N. E. 816, 53 Am. St. Rep. 324, 37 L. R. A. 177; *Price* v. *Oswego and Syracuse R. R. Co.,* 50 N. Y. 213, 10 Am. Rep. 475. The facts of this case are so similar to those in *Winslow et al* v. *Vt. & Mass. R. R. Co., supra,* that to sustain the judgment in this case would overrule that case, besides being in conflict with the great weight of authority outside of this State. This rule may seem harsh in some cases; but experience has firmly established the fact, that in a great majority of cases this strict requirement imposed upon the common carrier is for the public good.

The defendant urges upon us its former course of delivery of goods shipped to Fayette. To be sure, it enabled Solomon to perpetrate a fraud upon the defendant; but the plaintiff was not in any way responsible for that, and, so far as the case shows, was ignorant of it. The defendant also argues that because Solomon ordered the goods in the name of Fayette, in the absence of negligence or knowledge of fraud, the common carrier would not be liable, and cites, *Wilson* v. *Adams Express Co.,* 27 Mo. App. 360, and *Dunbar* v. *Boston & P. R. Co.,* 110 Mass. 26, 14 Am. Rep. 576, in support of its claim.

These cases, when rightly considered, are not in conflict with the rule laid down in *Winslow* v. *Vt. & Mass. R. R. Co., supra,* also cited by the defendant in this connection; besides, if they were, we should adhere to our own decisions, which we think are in line with the weight of authority in this country and in England.

The defendant also argues that the plaintiff ratified the delivery by receiving payment from Solomon of a part of the purchase price.   This position, we think, is not well taken.   The credit was given to Fayette, and the fact that Solomon paid part of the purchase price, without more, is not sufficient to show that the credit was transferred from Fayette to Solomon.   The fact that the goods were addressed to Fayette, 77 North Street, in Burlington, is not sufficient to justify the defendant in delivering the goods to Solomon, as argued by the defendant.   The case does not show that it was expected that they were to be delivered at that address.

The number of the street was given for the purpose of aiding the defendant in identifying the consignee, but that address in no way relieved the defendant from its liability to deliver to the proper party, or to hold the goods until it could do so.

The defendant further argues that the plaintiff is estopped from urging his claim against the defendant because of the culpable conduct of Fayette.   What we have said above about Fayette's connection with this case sufficiently answers this argument.   The plaintiff had nothing to do with Fayette's conduct and is not responsible for it.   Cases can be found where goods have been ordered under an assumed name and delivered to him by the carrier, in which the carrier has been held not liable to the consignor for such delivery; but those cases are not in point, for in those which we have seen the credit was given to the party ordering the goods under an assumed name, while here the goods were not delivered to the person to whom the credit was given.

*Judgment reversed, and judgment for the plaintiff, and cause remanded for the assessment of damages.*