JOHN R. BOOTH v. NEW YORK CENTRAL RAILROAD COMPANY.

January Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed March 1, 1921.

*Carriers—Notice of Arrival of Goods—Construction of Bill of Lading Question of Law—Title to Goods Shipped Under Order Bill of Lading—Conversion—Delivery of Goods to Warehouse by Carrier Not a Conversion—Declaration by Agent of Past Transaction— Statement Amounting to Conclusion of Law—Final Judgment in Supreme Court.*

1.  If notice of the arrival of goods, consigned to the order of the shipper, "notify B.," other than to the "notify" party was required before the carrier could place the goods in storage, notice of their arrival to the shipper from B. supplied the lack of formal notice from the carrier.

2.  So far as a bill of lading states the terms on which the transportation, detention, and delivery of goods is to be made, it stands as a contract; and, being in writing, its construction is a question of law.

3.  Where goods were shipped under an "order bill of lading" providing that surrender thereof properly indorsed would be required before the delivery of the goods, title to the goods remained in the seller, and could pass to the buyer only on delivery of the bill of lading.

4.  "Conversion," when applied to the law of trover, imports an unlawful act, mere nonfeasanace not being enough; and the act complained of must be such an interference with the owner's dominion and right of property as cannot, against him, be justified or excused by one who comes lawfully into possession.

5.  Where plaintiff shipped goods over defendant railroad under a bill of lading whereby they were consigned to the order of the plaintiff, "notify B.," the buyer, and, on their arrival, B. did not take the goods, but arranged with a warehouse company for their unloading and storage, and requested the defendant to deliver the goods to the warehouse for storage (as it had a right to do under the bill of lading), which it did with specific

directions not to deliver without surrender of the bill of lading properly indorsed, and the warehouse company received the goods to the account of the plaintiff, "notify B.," such delivery to the warehouse company by the defendant did not so transfer control of the goods to B. as to make it liable to the plaintiff in an action of trover for their conversion.

6. In such case, a statement by defendant's freight agent, after the goods were delivered to the warehouse company, that "they had turned the car over to B. on B.'s orders," was an unauthorized declaration by an agent of a past transaction, and not competent as an admission against the defendant.

7. Such statement, received in evidence against objection and exception, was not for consideration on the motion by both parties for a directed verdict, as it was, in the circumstances, a mere conclusion of law, and the facts on which it was based were in evidence and not in dispute.

8. Where both parties moved for a directed verdict, and a verdict was directed for the plaintiff, the Supreme Court, in deciding whether it should render final judgment, will treat the case as it would stand on retrial with evidence erroneously admitted not in the record.

ACTION OF TORT for the alleged conversion by the defendant of a carload of box shooks. Plea, the general issue. Trial by jury at the September Term, 1920, Chittenden County, *Butler,* J., presiding. At the close of all the evidence the Court directed a verdict for the plaintiff. Judgment on the verdict. The defendant excepted. The opinion states the case.

*Edwin W. Lawrence* for the defendant.

*Max L. Powell* for the plaintiff.

TAYLOR, J. Prior to April 21, 1917, George B. Breon, a lumber dealer of Philadelphia, Pa., ordered from the plaintiff a carload of box shooks. Plaintiff shipped the shooks on that date from Burlington, Vermont, over the Rutland Railroad, destined for Sodus, New York; but the car was later diverted to Rochester, New York, where it arrived April 28, 1917, over the defendant's road. The contract under which the shooks were received for transportation was the uniform bill of lading known as an "order

bill of lading''. The shooks were consigned to the ''order of J. R. Booth, notify George B. Breon,'' at a given address in Philadelphia. By the terms of the bill of lading it was agreed that the surrender thereof properly indorsed would be required before the delivery of the property. The bill was indorsed by the plaintiff, ''Upon payment of attached draft please deliver to the order of Geo. B. Breon'', and went forward through certain banks; but the draft, not being honored, was never delivered. The defendant notified Breon of the arrival of the shooks at Rochester on the day of their arrival. Inspection without permission being forbidden by the bill of lading, May 3, 1917, Breon telegraphed the plaintiff, ''Please wire N. Y. C. here at Rochester to allow examination of car here''; in response to which the plaintiff wired the defendant, ''Allow examination only''. The customer for whose benefit the permission of examination was asked did not take the shooks, and, as the car was on demurrage, Breon arranged with the Whitney Elevator and Warehouse Company of Rochester for unloading, and requested the defendant to deliver it to the warehouse company. Pursuant to the request the defendant placed the shooks in storage with the warehouse company on May 8, 1917, with specific directions not to deliver without the surrender of the original bill of lading properly indorsed. The shooks were received by the warehouse company ''account of order of J. R. Booth, notify G. B. Breon,'' and remained in storage in this situation until July 22, 1917, when they were consumed by a fire that destroyed the warehouse.

The action is tort based upon the claim that there was a conversion of the shooks by the defendant. It was agreed at the trial that the only issue was whether or not the shooks were delivered to Breon; so the real question is whether the delivery to the warehouse company was, in the circumstances, such a delivery to Breon as amounted to a conversion. At the close of the evidence, both parties moved for a directed verdict. In overruling the defendant's motion the court held that Breon had no authority to arrange for the storage of the shooks or to do anything with the shipment; that the defendant was guilty of a conversion if the shooks were delivered to the warehouse company on the authority or at the request of Breon, who arranged for the storage, the price to be paid, and the conditions under which they were stored, and if the defendant ''recognized him as the party to deliver the goods to on his order, to the warehouse under his

direction, even though it was subject to the payment of the draft attached to the bill of lading''. The court directed a verdict for the plaintiff, holding that the defendant converted the shooks when it treated Breon as the consignee and arranged with him to deliver them into the warehouse on his account, under conditions agreed upon by Breon with the warehouse company, whereby the latter charged the storage to Breon and treated him as the owner of the goods. The defendant reserved exceptions to these rulings, among others, which present the principal questions argued on review.

In determining whether the placing of the shooks in storage was a delivery to Breon, reference must be had to additional facts. As justifying its conduct, the defendant relied upon the following provision of the bill of lading: ''Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage''. As showing a wrongful delivery to Breon, the plaintiff relies upon the fact that the traffic manager of the warehouse company testified that he regarded the ''notify'' party in an order bill of lading as the consignee—that it was so regarded ''by warehouses and railroads all over''—and the fact that certain advance charges (freight and demurrage) paid by the warehouse company, as well as charges for storage, were charged to Breon, and the further fact that a representative of the plaintiff who called on the defendant's freight agent at Rochester after the fire to inquire concerning the car of shooks testified that the agent said ''they had turned the car over to Mr. Breon on Breon's orders''.

It appeared without conflict in the evidence that all ''unclaimed freight'' from the defendant's railroad at Rochester, meaning freight the delivery of which was not accepted, was stored with this particular warehouse company. It also appeared that, on Breon's request to deliver the car to the warehouse company, the customary steps were taken to place the shooks in stor-

age as unclaimed freight. In usual course, an "unclaimed report" was issued by the defendant and a copy forwarded to the agent at Burlington for delivery to the plaintiff. A "notice of arrival" was sent by the defendant to the warehouse company and the car ordered into storage. The notice of arrival described the contents of the car, specified "Order J. R. Booth, notify Geo. B. Breon," as consignee, and bore the direction "This freight must not be delivered without the surrender of the original bill of lading properly indorsed". This was all in accordance with the defendant's arrangement with the warehouse company. It further appeared that in order to obtain delivery of the goods from the warehouse company it was necessary that the original bill of lading be presented at the office of the cashier of the company and a release of the shipment obtained. Breon had no receipt of the goods from the warehouse company. The extent of his "arrangement" with the company was an agreement as to the rate to be charged for storage. All that he did by way of exercising any control of the shooks while in storage was to request the company to enter and store any orders given by parties who he said were going to sell them, and to ask that they be well covered to protect them from dust.

The plaintiff lays special stress upon the claimed fact that both the warehouse company and the defendant's agent at Rochester regarded Breon as the consignee. *Joslyn* v. *Grand Trunk Ry. Co.*, 51 Vt. 92, is full authority for his position that the "notify" party in an order bill of lading is not in legal contemplation the consignee, so that delivery to him without the production of the indorsed bill would protect the defendant; but it is quite immaterial that they may have misjudged Breon's relation to the shipment if what they did was consistent with his true relation thereto and not an invasion of the plaintiff's rights. Nor is it of any importance that Breon selected the warehouse where the goods should be stored, if such was the fact, or that the plaintiff did not assent to the selection, providing the place selected was such as the plaintiff could use for storage purposes within the terms of the bill of lading. The only notice from the defendant was that given to Breon, although the plaintiff had knowledge of the arrival of the car at Rochester on receipt of the telegram from Breon already referred to.

[1] It is argued that the defendant was in fault in not notifying the plaintiff personally before placing the shooks in

storage, and *Kommel & Son* v. *Champlain Transp. Co.*, 93 Vt. 1, 105 Atl. 253, 2 A. L. R. 275, is cited to the proposition that the consignee has a reasonable time in which to remove the goods after notice of arrival, during which the liability as carrier continues. This claim is outside the issue on which the case was tried. But, if notice of arrival other than to the "notify" party was required before placing the shooks in storage, notice through the telegram from Breon would supply the lack of formal notice from the defendant. It is also argued that the loss to the plaintiff arose from the negligence of the defendant, and that the provision of the bill of lading respecting storage, upon which the defendant relies, cannot avail, as it is an attempt to contract against liability for loss due to negligence. It is enough to say that the action is not based on a claim of negligence, which leaves the argument without force.

[2-4]   In disposing of the motions the court expressed the opinion that there was no evidence tending to show that the shooks were stored in a public or licensed warehouse. If such is the fact, it by no means follows that the defendant acted without right, or that what it did amounted to a delivery of the shooks to Breon, which the plaintiff was bound to show to entitle him to recover as the case was being tried. So far as the bill of lading states the terms on which the transportation, detention, and delivery of the shooks was to be made, it stands as a contract; and, being in writing, its construction is a question of law. *Davis* v. *Central Vermont R. Co.*, 66 Vt. 290, 29 Atl. 313, 44 A. S. R. 852. By the terms of the contract, if the shooks were not removed by the party entitled to receive them within the time specified, two courses were open to the defendant: The shooks could be kept in the place named in the bill of lading subject to responsibility as warehouseman only; or they could be removed to and stored in a public or licensed warehouse, in which case they would be held without liability on the part of the defendant. The character of the warehouse, whether public or private, is immaterial to the issue here. The defendant was at liberty to place the shooks in a warehouse for storage, thereby assuming the responsibility of warehouseman if the place selected was not a public or licensed warehouse. The warehouse selected was within the contemplation of the bill of lading, and the fact that Breon requested the storage at the place employed by the defendant for storing all unclaimed freight is wholly insignificant. The controlling question

is whether anything connected with the arrangement under which the shooks were delivered to the warehouse company gave Breon any control thereof that interfered with the rights of the plaintiff under his contract with the defendant. Confessedly the title to the shooks remained in the plaintiff, and could only pass to Breon on delivery of the bill of lading. *Davis* v. *Bradley,* 28 Vt. 118, 65 A. D. 226. He never had possession of the shooks, for that could be obtained only on surrender of the bill of lading properly indorsed. Conversion when applied to the law of trover imports an unlawful act. Mere nonfeasance is not enough. From the nature of the action the act complained of must be such an interference with the owner's dominion and right of property as cannot, against the owner, be justified nor excused by one who comes lawfully into possession. *Andrews* v. *Carl,* 77 Vt. 172, 59 Atl. 167. It follows that to entitle the plaintiff to recover he must show at least such a transfer of the control of the shooks to Breon as would amount to an unlawful interference, or exercise of dominion with respect thereto in exclusion or defiance of his rights. *Thorp* v. *Robbins,* 68 Vt. 53, 33 Atl. 896; 26 R. C. L. 1110.

[5-8] It is manifest that the court erred in sustaining the plaintiff's motion for a directed verdict, holding the defendant liable as a matter of law. In disposing of the exception to the action of the court in overruling the defendant's motion for a directed verdict, it remains to consider whether the undisputed evidence left any question of liability for the jury. We fail to find any legitimate evidence tending to show what would amount to a conversion by delivery of the shooks to Breon. The testimony as to what defendant's freight agent said respecting delivery would not support a verdict for the plaintiff. It was admitted against the objection that the agent had no authority to bind the defendant by such a statement. If made, which the agent denied, it was at most an unauthorized declaration by an agent of a past transaction, and not competent as an admission against the defendant. *Spinney's Admx.* v. *Hooker & Son,* 92 Vt. 146, 151, 102 Atl. 53; *In re Barron's Estate,* 92 Vt. 460, 466, 105 Atl. 255; *Blunt* v. *M. & W. R. R. Co.,* 89 Vt. 152, 94 Atl. 106; *First National Bank* v. *Bertoli,* 87 Vt. 297, 89 Atl. 359, Ann. Cas. 1917 B, 590; *Taplin & Rowell* v. *Marcy,* 81 Vt. 428, 439, 71 Atl. 72. Although admitted in evidence, the statement was not for consideration on the motion for a directed verdict; for it was,

in the circumstances, a mere conclusion of law, and the facts on which it was based were in evidence and not in dispute.

Enough has been said to show that on the undisputed evidence no such control of the shooks was permitted by Breon as in any way interfered with the plaintiff's rights, and so the court erred in overruling the defendant's motion. In deciding whether, in the circumstances, final judgment should be rendered here, we treat the case as it would stand on retrial, if awarded, with the evidence erroneously admitted not in the record.

*Judgment reversed, and judgment for the defendant.*