**PATTERSON PRODUCE CO. v. AMERICAN ·
RY. EXPRESS CO.** (No. 2082.)

Court of Civil Appeals of Texas. El Paso.
Dec. 8, 1927.

Rehearing Denied Jan. 5, 1928.

**l. Carriers** ⬤═▷93—**Shipper, accepting part payment from person to whom delivery was wrongfully made, does not waive carrier's conversion unless shipper knowing facts so intended.**

An unauthorized delivery by carrier is not to be held as ratification by owner's accepting part payment from person to whom delivery was made, nor held to be waiver of conversion by carrier, unless owner, with full knowledge of facts, so intended.

**2. Carriers** ⬤═▷94(4)—**Amount shipper receives from person to whom carrier wrongfully delivered shipment only mitigates damages.**

Where carrier makes wrongful delivery of shipment and shipper accepts part payment from person to whom delivery was made, amount received is only in mitigation of damages sustained by carrier's conversion.

**3. Evidence** ⬤═▷108—**In action for damages for wrongful delivery, it was competent to show shipper's intent in accepting part payment from person to whom shipment was delivered.**

In action for damages for wrongful delivery of shipment of turkeys, shipper's intent to ratify or waive carrier's unauthorized delivery was not to be conclusively presumed against shipper by his accepting part payment from person to whom turkeys were delivered, and it was competent to show intent with which shipper acted.

**4. Carriers** ⬤═▷94(5)—**Whether shipper accepting part payment from person to whom turkeys were wrongfully delivered intended to ratify unauthorized delivery held for jury.** .

In action for damages for wrongful delivery of shipment of turkeys, question whether shipper, by accepting part payment from person to whom goods were delivered, intended to ratify or waive unauthorized delivery, *held* for jury.

**5. Carriers** ⬤═▷93—**Carrier could not complain of shipper's settlement with person to whom goods were wrongfully delivered which mitigated damages for which carrier was liable.**

Carrier, which delivered shipment of turkeys to wrong party, could not complain of shipper's making settlement with person to whom turkeys were delivered, since it mitigated damages for which carrier was liable.

**6. Carriers** ⬤═▷93—**Carrier could not complain that shipper was not more diligent in protecting rights against person to whom goods were wrongfully delivered than carrier was.**

Carrier could not complain that shipper was not more diligent in protecting its rights against person to whom shipment of turkeys was wrongfully delivered than carrier was itself, especially where carrier's misconduct was responsible for situation in which carrier found itself.

**7. Carriers** ⬤═▷93—**Shipper was not estopped, by accepting part payment from person to whom shipment was wrongfully delivered, from asserting claim for balance against carrier.**

Shipper was not estopped, by accepting part compensation for his loss from person to whom shipment of turkeys was wrongfully delivered, from asserting his claim for balance against carrier, since shipper was entitled to full compensation by reason of carrier's conversion.

Appeal from District Court, Dallas County; Towne Young, Judge.

Action by the Patterson Produce Company against the American Railway Express Com-

pany. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellant.

R. G. Payne, Gaius G. Gannon and Robertson, Robertson & Gannon, all of Dallas, for appellee.

HIGGINS, J. On December 17, 1923, appellant, Patterson Produce Company, shipped by American Railway Express two cars of dressed turkeys from Dallas, Tex., to New York City. Appellant instructed appellee to ship one car to Patterson Produce Company, "Notify Conron Bros.," and the other car to Patterson Produce Company. This latter car was A R E car No. 1132. Appellant had theretofore contracted to sell a car of turkeys to Conron Bros. at 29 cents per pound, and the one consigned with instructions to notify Conron Bros. was shipped in fulfillment of that contract. A car shipped with such notification instruction is delivered upon arrival to the parties to be notified without surrender of the shipping receipt which is given by appellee to the shipper. It was appellant's purpose to have car No. 1132 sold in New York upon arrival, for its account, by some one engaged in that business.

Contrary to the instruction given, appellee shipped both cars consigned to Patterson Produce Company notify Conron Bros., and delivered to appellant shipping receipts so showing. Early the next morning appellant, upon examining the receipts, discovered the error, and immediately called appellee's attention to the same and instructed it to correct the notification as to car No. 1132, from Conron Bros. to De Winter & Stewart, to whom appellant decided it would have that car delivered and the turkeys therein sold for its account. Appellee agreed to make the correction as requested, but failed to do so.

As to turkeys shipped to be sold for the account of the shipper, it is the custom for the shipper to draw upon the person to whom he had shipped with shipping receipt attached to the draft for an amount within the net amount the turkeys will realize, which draft is paid by the consignee, who later remits to the shipper the balance of the net proceeds. Appellant drew a draft upon De Winters & Stewart upon the basis of 21 cents per pound for car 1132, and forwarded same for collection through a bank. On December 21, De Winter & Stewart by wire advised appellant that appellee had that day delivered car No. 1132 to Conron Bros., and suggested that instructions be given for presentation of the draft to the latter. While it is not directly shown, the inference is that De Winter & Stewart dishonored the draft because of inability to secure delivery of the car. Appellant gave instructions to present the draft to Conron Bros., and several days thereafter the same was paid by the latter, who later

remitted the balance of the proceeds upon the basis of 29 cents per pound, which was accepted by appellee. The president of Conron Bros. testified they accepted car 1132 because they believed it was billed to them.

The market price of turkeys in New York at that time was several cents above 29 cents per pound, and this suit was brought by appellant to recover of the American Railway Express Company the difference between what would have been realized by the sale of the turkeys at the market price for its account and the amount received from Conron Bros. at the rate of 29 cents per pound.

Upon the trial, a peremptory instruction in favor of the appellee was given.

In support of the judgment, it is contended by appellee that the Patterson Produce Company ratified the unauthorized delivery to Conron Bros. and waived any claim for conversion against appellee, because with full knowledge of the misdelivery appellant "sold the shipment to Conron Bros., drew a draft for an advancement of 21 cents per lb. on Conron Bros., for it, and later accepted a final settlement for the shipment on the basis of 29 cents per pound," thus conclusively establishing such ratification and waiver. There is, of course, a difference between ratification and waiver, but it is essential in both cases that the party sought to be charged with a ratification or waiver shall have acted with full knowledge of all material facts and intended to ratify or waive. It is very true that under certain circumstances an intent to ratify an unauthorized act or to waive an existing right will be conclusively presumed against one, and his secret intention not to do so will avail him nothing.

[1, 2] While there may be some cases to the contrary, the great weight of authority, and in our opinion the correct view, is that an unauthorized delivery by the carrier is not to be held as ratified by the owner accepting part payment from the person to whom delivery was made, nor held to be a waiver of the conversion by the carrier, unless the owner, with full knowledge of the facts, so intended, and whether or not he so intended is a question of fact to be determined by the jury and not conclusively implied against him. In such cases the amount received by the owner is only in mitigation of the damages sustained by the conversion. 10 C. J. 267; 1 Moore on Carriers (2d Ed.) 272; Lester v. Delaware Ry. Co., 92 Hun, 342, 36 N. Y. S. 907; McSwegan v. Pennsylvania Ry. Co., 7 App. Div. 301, 40 N. Y. S. 51; Kommel. v. Champlain Transp. Co., 93 Vt. 1, 105 A. 253, 2 A. L. R. 275; Montgomery v. Davis, 209 Mo. App. 698, 240 S. W. 282; Kewanee Utilities Co. v. Norfolk Ry. Co., 118 Va. 628, 88 S. E. 95; Keota Produce Co. v. Chicago, R. I. & P. R. Co., 189 Iowa, 1288, 179 N. W. 834; Lipman Refrigerator Co. v. Baltimore & Ohio

Warehouse Co., 20 Ohio App. 523, 152 N. E. 686; Atlantic R. Co. v. Dahlberg Brokerage Co., 170 Ala. 617, 54 So. 168; Lake Shore Ry. Co. v. McIntyre, 60 Ind. App. 191, 108 N. E. 978. In this connection, see, also, Hines v. Jordan (Tex. Civ. App.) 228 S. W. 633.

[3, 4] Under these authorities, the intent to ratify or waive is not to be conclusively presumed against appellant by accepting payment from Conron Bros. at the rate of 29 cents per pound, and it was therefore competent to show the intent with which appellant acted. Upon this phase of the case appellant's president testified there was no such intention, and payment from Conron Bros. was accepted in mitigation only of the claim against the express company. We are therefore of the opinion that the issue should have been submitted to the jury.

Appellee also asserts that appellant is estopped to assert a claim for conversion against appellee; its proposition being thus stated:

"The uncontroverted and uncontradicted evidence showing that, with full knowledge of the misdelivery, and before making any claim upon the express company, appellants decided to sell the shipment to Conron Bros., and that in pursuance of such design they presented a draft to Conron Bros. for 21 cents per pound as an advancement upon the shipment, which said draft was paid and the proceeds accepted by appellants, and that later appellants made a settlement with Conron Bros. for the shipment on the basis of 29 cents per pound by accepting a further remittance for the turkeys, all without the knowledge, consent, or acquiescence of appellee, and all in denial of an affirmation of the title in appellee by appellants, and all upon the theory that after the misdelivery appellants were still the owners of the goods, an estoppel against appellants to claim a conversion against appellee was established, because by reason of appellant's action appellee has been precluded from going back upon Conron Bros. for any amounts lost by it in the transaction."

Appellant's president testified:

"I wrote a letter to Conron Bros. demanding payment of the market value of these turkeys, dated January 9, 1924, on Patterson Produce Company's letterhead, reading as follows:

"'We received reports of the three cars of turkeys shipped the last of December, but through some mistake you evidently thought you bought A R E 1132, but you did not. This car was shipped under consignment to De Winter & Stewart, but through some error the express company delivered the car to you. At the time of the arrival of this car, the market was in good shape in New York, and we should have received at least 5 cents per pound more for same, as we have account sales sold by Cudahy, and at that time No. 1's brought as much as 40 cents per pound.

"'You had an opportunity to buy this car, but your representative, Wade Medlin, refused to buy same and asked us to consign the car to you, but we had some flattering offers from De Winter & Stewart and consigned it to them instead.

"'We trust you will look this matter over, and remit us the amount due, or else we will have to look to the express company for the loss on same, as they are absolutely at fault, as they had wires from us as early as Monday morning to deliver the car to De Winter & Stewart, but through some mistake they did not comply with our requests.'

"We were looking to the express company for the difference between what we got from Conron and what the market price was; we told the express company if they did not get it what we would do. Mr. Knouse said he was responsible for it.

"I told the express agent in this conversation what would happen to them if they did not deliver the car to De Winter & Stewart. That was before it was delivered to them, and the next morning I told them that.

"Q. And after you knew it had been delivered to Conron Bros. you went to Conron Bros. and presented the draft? A. What else could I do?

"Q. The fact is you did that? A. Yes.

"Q. And then you waited to see how much Conron Bros. was going to remit you on it? A. Yes.

"Q. Then Conron Bros. remitted to you on the basis of 29 cents a pound, didn't they? A. Yes, sir.

"Q. And after that time and before you said anything to the express company you wrote Conron Bros. asking them to give you the balance of it, didn't you? A. Yes, sir.

"Q. You accepted the 29 cents? A. Yes.

"Q. Then asked for more? A. Yes.

"Q. And, when they refused to give it to you, you filed claim against the express company? A. Yes, sir; I did.

"Q. And when the car was delivered to Conron Bros. and until the time you filed your claim against the express company you did not say anything to the express company about it, did you? A. No, sir; because I thought I was going to get the full value. I told the express company if I did not get the full value I would file suit. I told them that before the car got there, got to New York, told them I wanted De Winter to have that car and told them to keep wiring, not to let Conron Bros. have it. All that occurred prior to the time the car got to New York. If I didn't get what the stuff was worth, I told them I would look to them for it. They said, 'We will take care of you; we will stand responsible for it.' They said they would be responsible. They didn't say they would make sure the car was delivered to De Winter & Stewart, they said they would deliver it there, but they told me they would be responsible, and 'don't you worry.' Mr. Knouse told me that; told me not to worry. All that was before I knew it had been delivered. After I knew it had been delivered, I don't think I had any more to say to the express company about that car until I filed the claim."

There is other evidence showing several requests made by appellant to have the billing corrected prior to arrival of the car in New York and assurances by appellee's agent that it would do so; that appellee was responsible and not to worry.

[5] The evidence does not show a volun-

tary sale to Conron Bros. It simply shows that after the unauthorized delivery appellant made the best settlement it could with Conron Bros. Of this appellee cannot complain, for it mitigated the damage for which it was liable.

[6, 7] Appellee offered no evidence in denial of the alleged unauthorized delivery to Conron Bros. Appellee at all times knew that by such unauthorized delivery it was liable to appellee as for conversion and was legally obligated to make full compensation for the loss sustained. It had ample opportunity to do so prior to the time appellee was made the final payment by Conron Bros. If appellant desired to protect any right over against Conron Bros. which it might have had, it was its duty to protect such right by discharging its obligation to appellee. In our opinion the evidence does not show that the appellant was in any wise responsible for appellee's failure to protect any such right. Appellee cannot complain that appellant was not more diligent in protecting its rights against Conron Bros. than it was itself. Especially is this true when its misconduct was responsible for the situation in which the appellee found itself. 21 C. J. 1138. Appellee was entitled to full compensation by reason of the conversion, and he had the right to accept part compensation for his loss from Conron Bros., and is not estopped thereby from asserting his claim for the balance against the carrier.

In addition to the authorities heretofore cited, showing that the payment made by Conron Bros. is to be treated simply in mitigation of the damages, see, also, 26 R. C. L. title, "Trover," § 58, p. 1145; 38 Cyc. 2103; 1 Cooley on Torts (3d Ed.) 223 to 228; Arrington v. Railway, 51 N. C. 68, 72 Am. Dec. 559.

Reversed and remanded.